Elijah Ephraim **JHIRAD**, Appellant,

v.

Thomas E. **FERRANDINA**, United States Marshal, Southern District of New York, Appellee.

Nos. 1113, 1114, Dockets 73–1126, 73–1924.

United States Court of Appeals, Second Circuit.

Argued July 20, 1973.

Decided Oct. 24, 1973.

Edward L. Sadowsky, New York City (Tenzer, Greenblatt, Fallon & Kaplan, New York City, on the brief), for appellant.

Louis Steinberg, New York City, (Edwin A. Steinberg, New York City, on the brief), for the Government of India.

William R. Bronner, New York City, (Christopher Roosevelt, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS and OAKES, Circuit Judges, and TYLER, District Judge.*

HAYS, Circuit Judge:

This is a consolidated appeal from two orders of the United States District Court for the Southern District of New York denying the appellant's petitions for writs of habeas corpus in an international extradition proceeding. On the request of the government of India, the appellant, the former Judge Advocate General of the Indian Navy, was arrested on the charge that he embezzled a portion of a Naval Prize Fund with the administration of which he had been entrusted. The government of India sought extradition under a treaty made in 1931 between the United States and Great Britain at a time when India was a dominion of Great Britain. The treaty was applied by Great Britain to India in 1942. In 1950 India achieved independence. Somewhat later, in 1967,

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

the validity of the treaty as a treaty between the United States and India was confirmed by an exchange of notes between the State Department of the United States and the government of India.

Initially, the complaint against the appellant alleged 52 separate embezzlements of the Naval Prize Fund. The Naval Prize Fund was derived from a grant by Great Britain of a portion of the proceeds of naval prizes of war captured in World War II. The Fund was to be distributed to the officers and men qualified for such distribution by reason of having served at sea for a certain amount of time during the war. In 1958 Great Britain transferred the sum of 1,973,679 rupees to the Indian Navy for distribution. The Fund thus established was to be administered by three Naval officials, including the appellant. The charges brought by the Indian Government against the appellant alleged that he had withdrawn cash from the Fund and deposited it in his personal account. The charges alleged that the acts of embezzlement took place between 1959 and 1961. The Fund was exhausted in December, 1961. The appellant continued in his office as Judge Advocate General of the Indian Navy until 1964. From 1964 until 1966 the appellant remained in India receiving half pay and residing in a home furnished by the Indian Government. In July, 1966 the appellant left India, residing first in Switzerland, then in Israel, and finally arriving in the United States where he was granted a permanent resident visa. The charges against him were not brought until 1968, two years after he left India, and well over five years from

the date of the last alleged act of embezzlement (September 27, 1961).

The period of time which elapsed between the date of the alleged offenses and the prosecution of charges by the government of India gives rise to the major legal challenge raised by the appellant on this appeal. Appellant contends that extradition is barred by the statute of limitations. For non-capital offenses, 18 U.S.C. § 3282 establishes a five year statute of limitations.[1] More than five years passed before the charges were brought by the government of India. However, 18 U.S.C. § 3290 provides that the statute of limitations "shall [not] extend to any person fleeing from justice." The district court found that 49 of the 52 charges brought against the appellant were barred by the statute of limitations, since with respect to them five years passed while the appellant remained in India. However, for the last three counts, the district court found that although five years had passed,[2] the statute was tolled under the provisions of 18 U.S.C. § 3290 because the appellant had fled from justice. In making this finding, the district court held that mere absence from India was sufficient to constitute "fleeing from justice" within the meaning of 18 U.S.C. § 3290. The appellant contests this construction, arguing that an intent to flee to avoid prosecution must be shown before the statute of limitations is tolled.

Since we are persuaded that the extradition treaty under which the government of India is attempting to extradite the appellant is valid as between the United States and the Republic of India,[3] we must decide whether the dis-

---

1. 18 U.S.C. § 3282 (1970) provides:
    "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years after such offense shall have been committed."

2. According to the appellant's brief, the appellant left India on July 26, 1966. The

statute of limitations on the last three counts would have expired on August 29, September 26 and September 27, 1966.

3. As the district court noted, the position of the Executive Branch, the actions of both governments, and the historical continuity between British India and the Republic of India support the continued validity of the treaty. Jhirad v. Ferrandina, 355 F.Supp. 1155, 1159–1161 (S.D.N.Y.1973).

trict court was correct in interpreting the phrase "fleeing from justice" so as to include a situation in which no intention to flee to avoid prosecution was proved.

Section 3290 of Title 18 of the United States Code provides simply that:

"No statute of limitations shall extend to any person fleeing from justice."

The appellant contends that the phrase "fleeing from justice" means that the government must prove that the individual left the place where the offense occurred with the intention of avoiding arrest or prosecution. The district court rejected this construction, finding that mere absence from the place of the offense would suffice to prove "fleeing from justice."

There is a direct conflict among the Circuits on the point in issue. The Fifth Circuit has clearly held that mere absence is not sufficient to show "fleeing from justice" and flight with intent to avoid arrest or prosecution must be proved. In Donnell v. United States, 229 F.2d 560, 565 (5th Cir. 1956), the court held that:

" . . . in determining whether a person charged with crime will be denied the right to be protected by the statute of limitations, the purpose and intent of his absence is an important matter to be inquired into under the plain words of the statute and the decisions discussed."

The court based its conclusion on "the plain word[ing] of the statute" and on the Supreme Court ruling in Streep v. United States, 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895). In Streep the Court did not rule directly on the point presented in Donnell and in the case before this court. However, the Fifth Circuit in Donnell found that:

"[i]n affirming, the Supreme Court held that it was unnecessary that a person have in mind avoiding the justice of any particular court in order to be a fugitive within the meaning of the statute. Nevertheless, it was clearly recognized that the general in-

tention of the defendant in leaving the jurisdiction is material and is an indispensable aspect in considering whether he was, while outside the jurisdiction, a fugitive from justice." 229 F.2d at 562.

The Fifth Circuit had reached a similar conclusion concerning the construction of the phrase "fleeing from justice" in two previous cases, Porter v. United States, 91 F. 494 (5th Cir. 1898), and Greene v. United States, 154 F. 401 (5th Cir.), cert. denied, 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907).

The First Circuit adopted the same position in Brouse v. United States, 68 F.2d 294 (1st Cir. 1933), stating:

"[t]he essential characteristic of fleeing from justice is leaving one's residence, or usual place of abode or resort, or concealing one's self, *with the intent to avoid punishment*." Id. at 295 (emphasis added).

On the other hand the Eighth and the District of Columbia Circuits have construed the phrase "fleeing from justice" differently, holding that mere absence from the place of the offense is sufficient to toll the statute. See King v. United States, 144 F.2d 729 (8th Cir.), cert. denied, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1944); McGowen v. United States, 70 App.D.C. 268, 105 F. 2d 791, cert. denied, 308 U.S. 552, 60 S. Ct. 98, 84 L.Ed. 464 (1939).

■ This court has never directly passed on the issue. We now hold on the basis of the plain language and the purpose of Section 3290 that the government must show an intent to flee from prosecution or arrest before the statute of limitations is tolled. As the court noted in *Donnell*, supra, the phrase "fleeing from justice" carries a common sense connotation that only those persons shall be denied the benefit of the statute of limitations who have absented themselves from the jurisdiction of the crime with the intent of escaping prosecution. It does not appear to us to be unreasonable to provide for tolling of the statute of limitations when a person

leaves the place of his alleged offense to avoid prosecution or arrest and for not tolling the statute when a person without such purpose of escaping punishment merely moves openly to another place of residence.

We think that the language of the Supreme Court in Streep v. United States, supra, supports this construction as the court pointed out in *Donnell*, 229 F.2d at 562–563.

Since the district court found that mere absence was enough to toll the statute of limitations, it did not make a finding on the intent of the appellant in leaving India. We are asked by both sides to rule on the basis of the evidence submitted below on whether the appellant fled from India. with the intent to avoid prosecution, though the parties themselves reach opposite conclusions on the issue. We decline to make such a determination and, while reversing the decision, remand the case to the district court to make findings on the issue of intent.

Reversed and remanded.