**UNITED STATES of America,**

v.

**Romeo DE RISIO, Defendant.**

**No. 87 Cr. 0261 (KTD).**

United States District Court, S.D. New York.

May 11, 1988.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City (Edward McNally, Asst. U.S. Atty., of counsel), for U.S.

Caesar D. Cirigliano, The Legal Aid Society, New York City (John P. Curley, of counsel), for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant Romeo De Risio moves to dismiss a two-count indictment charging him with possession of stolen mail and bank robbery, on the grounds that the statute of limitations has run and, in the alternative, that the delay in prosecution violated his right to due process. The government opposes the motion and alleges that for a substantial period of time the statute of limitations was tolled because De Risio was fleeing from justice. Because the government has failed to establish that De Risio was fleeing from justice, the indictment must be dismissed as barred by the statute of limitations.

## FACTS

On March 6, 1979, Magistrate Harold J. Raby approved a complaint charging De Risio with possession of stolen mail, a violation of 18 U.S.C. § 1708 (1982). Affirmation of John P. Curley, Esq. ("Curley Affirm."), Exhibit A. The complaint alleges that on September 6, 1978, three checks which had been mailed by Dr. Matthew D. Branche for deposit in an account at a Chemical Bank branch, were deposited in an account for Bruno Odoardi at a Marine Midland Bank branch. *Id.* at ¶¶ 1, 3. The complaint further alleges that Mr. Odoardi's drivers license, which was used to open the Marine Midland account, was in De Risio's possession when the account was opened. *Id.* at ¶¶ 3, 5. Finally, it alleges that on September 13, 1978, De Risio withdrew funds from the Odoardi account at Marine Midland Bank. *Id.* at ¶¶ 6-7.

Magistrate Raby issued a warrant for De Risio's arrest on March 6, 1979. Government's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Indictment ("Gov't Memo.") at 3. Postal Inspectors made several attempts to arrest De Risio in March and May of 1979, but never saw him and were unsuccessful. Affidavit of Postal Inspector Peter J. Galante ("Galante Aff.") at ¶¶ 4-7; Defendant's Memorandum in Support of his Motion to Dismiss the Indictment ("Def. Memo.") at 2.

De Risio was arrested by Yonkers police for an unrelated matter on August 27, 1986, and a federal detainer was lodged. Curley Affirm. at ¶ 10; Affidavit of Assistant U.S. Attorney E. Scott Gilbert ("Gilbert Aff."), Exhibit C. A federal grand jury issued an indictment against De Risio on

March 30, 1987, eight years and seven months after the last act alleged in the complaint. Curley Affirm., Exhibit B; Gov't Memo at 8. The indictment charges De Risio with possession of stolen mail in violation of 18 U.S.C. § 1708 (1982) as charged in the complaint, and adds a charge of bank robbery in violation of 18 U.S.C. § 2113(b) (1982) predicated upon the same facts. Curley Affirm., Exhibit B.

De Risio moves to dismiss the indictment on the ground that the statute of limitations, 18 U.S.C. § 3282 (1982), has run.[1]

The government contends that, although the indictment was issued more than eight years after the completion of the offense, the statute of limitations was tolled from May 15, 1979 until May 26, 1986 because De Risio was fleeing from justice. Gov't Memo. at 9. In support of this contention, the government submits an affidavit by Postal Inspector Peter J. Galante who, although not involved in any of the attempted arrests, states that he has "spoken with fellow law enforcement officials and reviewed certain reports and other information contained in the Postal Inspection Service file...." Galante Aff. at ¶ 2. The government offers no explanation for the absence of affidavits from the Postal Inspectors who actually attempted to arrest De Risio, and offers no reports or other information from the Postal Inspection Service files.

Inspector Galante states that on May 15, 1979, the day De Risio allegedly fled from justice, Postal Inspector H.J. Picariello and others went to an apartment building in the Bronx believed to be De Risio's residence. Galante Aff. at ¶ 6. Inspector Picariello showed De Risio's photograph to the building superintendent's son who said De Risio lived there. Id. The agents checked the rear of the building where he said De Risio occupied the first-floor apartment. Id. None of the officers remained at the first floor window. Instead, they all went to the apartment door and knocked. Id. A male voice asked who was there. Id. When

they answered that they were Postal Inspectors, the voice responded: "Wait, I'll be right there." Id. After several minutes, all of the agents returned to the rear of the building where they found the window open and no one visible inside the apartment. Id. Inspector Galante says that from the photographs and other items that the officers could see inside, they identified the apartment as De Risio's. Id.

The officers set up an observation post and watched the entrance to the apartment, but they did not see De Risio. Id. at ¶ 7. According to Inspector Galante, Inspector Picariello returned "a few days later" and found the apartment emptied of the personal belongings previously seen through the open first-floor window. Id. at ¶ 8. At that time the officers told the superintendent's son to call them if De Risio returned, but he never called. Id.

Inspector Picariello contacted De Risio's mother on several occasions beginning in March 1979. Id. at ¶ 9. She stated that De Risio was not with her. Id. In 1979 and 1980, Inspector Picariello "staked out" her house on at least ten occasions, but he never saw De Risio. Id. at ¶ 10.

On November 10, 1980, eighteen months after the unidentified person fled what was thought to be De Risio's apartment in the Bronx, it is asserted that De Risio applied for a passport using the name Victor Trevino, Jr. Id. at ¶ 14. De Risio subsequently travelled to Italy, but the FBI reported that he travelled under his own name. Curley Affirm. at ¶ 15.

In May of 1986, De Risio contacted American authorities in Rome, Italy. Galante Aff. at ¶ 24; Curley Affirm. at ¶ 12; Def. memo. at 3. The FBI knew at the time that De Risio was wanted by postal authorities and Westchester County on outstanding warrants. Curley Affirm. at ¶¶ 15–16. They informed De Risio of the outstanding federal warrant, but made no effort to return him to the United States.

---

1. De Risio also contends that the delay in prosecution violated his right to due process, that the prosecution is vindictive, and that the prosecutor erred by not informing the grand jury of De Risio's potential defenses. Def. Memo. at 5–8. Because the indictment is dismissed as barred by the statute of limitations, I will not address these alternative arguments.

Galante Aff. at ¶ 24. Apparently, the FBI concluded from contacts with postal authorities and the Westchester District Attorney that neither jurisdiction was interested in prosecuting De Risio. Curley Affirm. at ¶ 13.

Later in May, 1986 De Risio returned to New York and again contacted the FBI. *Id.* at ¶ 12. He remained in regular contact with the FBI, underwent two polygraph examinations, and gave them his address which the FBI forwarded to postal inspectors and to the Secret Service. *Id.* at ¶ 12–14, 17. Still, no attempt was made to arrest him until he was arrested by Yonkers police on an unrelated matter three months later.

## DISCUSSION

The federal statute of limitation provides that an indictment must be found, or an information instituted within five years of the completion of the offense. 18 U.S.C. § 3282 (1982). This statute of limitations does not run, however, in favor of any person fleeing from justice. 18 U.S.C. § 3290 (1982). "The tolling provision of 18 U.S.C. § 3290 commences when a person absents himself from a jurisdiction where an offense has been committed with the intent of avoiding arrest or prosecution." *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.) (citing *Jhirad v. Ferrandina,* 486 F.2d 442 (2d Cir.1973), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (*Jhirad I*)), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). The burden is on the government to establish by a preponderance of the evidence either that the defendant intended to flee from prosecution or arrest, *Jhirad I,* 486 F.2d at 444, or that while out of the jurisdiction, the defendant learned of the charges and decided not to return. *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (*Jhirad II*).

The critical element of proof is knowledge of a pending charge. "The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending." *Catino, supra,* 735 F.2d at 722.

The government argues that the attempts to arrest De Risio, as described in the Galante Affidavit, support an inference that De Risio knew he was wanted by Postal authorities which, in turn, supports an inference of De Risio's intent to flee from prosecution. Before addressing the inferences to be drawn from evidence, however, that evidence must be determined to be admissible.

The admissibility of the Galante Affidavit is questionable at best. While the affidavit of an attorney without personal knowledge is admissible to the extent it is based on other admissible evidence, *Attorney General v. The Irish People, Inc.,* 595 F.Supp. 114, 117–18 (D.D.C.1984), here the government has not identified the "other admissible evidence." Postal Inspector Galante states that his affidavit is based on discussions with fellow law enforcement officials and certain "reports and other information contained in the Postal Inspection Service file." Galante Aff. at ¶ 2. Some of the reports might be admissible under an exception to the hearsay barrier. *See* Fed.R.Evid. 803. The "other information" in the Postal Inspection Service files may or may not be admissible, and Inspector Galante's discussions with colleagues almost certainly is not. The fundamental problem with Inspector Galante's affidavit is the inability to determine which portions would be admissible in another form.

■ Even assuming its admissibility, Inspector Galante's affidavit does not support an inference that De Risio knew of the charges against him and intended to flee from arrest or prosecution. When Postal Inspector Picariello and others went to what they believed was De Risio's apartment, they never saw De Risio. Despite the fact that the apartment was later emptied of personal effects, the government agents conducting surveillance never saw De Risio; furthermore, the building superintendent's son, who was told to call the Postal Inspectors if De Risio returned, never called.

The Postal Inspectors also never established that De Risio contacted his mother, who was told that her son was wanted on an arrest warrant. De Risio's mother never said that she was in contact with him, and the government agents conducting surveillance of her home during 1979 and 1980 never saw De Risio.

The first indication that De Risio knew of the charges against him was on September 10, 1985. On that date, Postal Inspector Galante "visited defendant's brother Vincent De Risio, who said he was in regular contact with defendant in Italy. Vincent De Risio was advised to have defendant call [Galante] collect or to return to the United States within 30 days."[2] Galante Aff. at ¶ 23. It is not known whether or when De Risio next contacted his brother, but even assuming De Risio learned of the arrest warrant that same day and decided not to return to the United States, the statute of limitations would not be tolled long enough to revive the indictment.

█ The indictment was filed on March 20, 1987, eight years and seven months after the offense occurred. Gov't Memo. at 8. The Indictment was filed within the five-year statute of limitations only if De Risio was fleeing from justice for more than three years and seven months. Assuming De Risio learned of the charges on September 10, 1985, it is not physically possible that the statute of limitations could have been tolled for three years and seven months after that. The government concedes that De Risio ended his purported flight on May 26, 1986. Gov't Memo. at 9.

For the foregoing reasons, the indictment against De Risio must be dismissed. Defendant's motion is therefore granted.

SO ORDERED.

---

**2.** Galante does not say that he told Vincent De Risio that his brother was wanted on an outstanding arrest warrant.