**UNITED STATES of America**

v.

**Patrick DUFF.**

**Criminal No. 96–90–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 17, 1996.

Marcus Davis, Assistant United States Attorney, Alexandria, Virginia, for U.S.

Frank Salvato, Alexandria, Virginia, for Defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

The issue before the Court is whether the definition of fleeing from justice is defined as the mere absence of an individual from the prosecution jurisdiction or active concealment of oneself with the intent to avoid arrest or prosecution. For the reasons that follow, this Court holds that fleeing from justice requires that the Government prove by a preponderance of the evidence that an individual knew charges against him were pending and actively concealed himself with the intent to avoid arrest or prosecution.

### I.

This matter is before the Court on Defendant. Patrick Duff's Motion to Dismiss the Indictment against. him on the ground that it is barred by the applicable statute of limitations, 18 U.S.C. § 3282.[1] The Government contends that the statute was tolled, pursuant to 18 U.S.C. § 3290, because the Defendant was a fugitive from justice during the five-year period.[2]

The Defendant is charged in a one-count Indictment which alleges that he made false and fictitious .oral and written statements intended to and likely to deceive a firearms dealer with respect to facts material to the lawfulness of the sale of firearms, in violation of Title 18 U.S.C. § 922(a)(6).

---

1. 18 U.S.C. § 3282 provides:
Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

2. 18 U.S.C. § 3290 states:
No statute of limitations shall extend to any person fleeing from justice.

As the Indictment makes clear, the Government alleges that on or about December 22, 1990, the Defendant stated on Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF") Form 4473 that he was a resident of 4521 Logsdon Drive in Annandale, Virginia, and had not been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, when in truth and in fact, the Defendant knew he was not a resident of 4521 Logsdon Drive in Annandale, Virginia, and he had been convicted on June 10, 1987, in the Supreme Court of Bronx County, New York of criminal possession of a weapon in violation of New York Penal Law § 265.03, a class "C" felony punishable by a term of imprisonment exceeding one year.

On May 31, 1996, the Defendant's Motion to Dismiss the Indictment on the ground that it is barred by the statute of limitations was heard by the Court. At the hearing, the Defendant did not present any witnesses.[3] The Government presented three witnesses: Gregg Hine, Special Agent, ATF; Donald McCarthy, Special Agent, ATF; and Peter McCole, Special Agent, ATF.

Agent Hine testified that the allegations contained in the Indictment are accurate in all respects. That is to say, on December 20, 1990, the Defendant, Patrick Duff; used his real name and signed his own name in an attempt to purchase six inexpensive firearms; that an instant computerized background check was executed and that the attempted sale of firearms was quickly voided by the Virginia State Police because the Defendant apparently had a criminal history. *See* May 31, 1996, Hearing Transcript (hereinafter referred to as "Tr. at ———"), Testimony of Agent Hine, pp. 9–12.

Agent Hine testified that he was alerted to the Defendant's ATF 4473 when he "happened to be in the Woodbridge Golden Jewelry, [which is] a federal firearms licensee in Woodbridge, Virginia, in March of 1991, and happened to notice a firearms transaction record in the name of Patrick Duff." Tr. at 9–10. Agent Hine was able to ascertain from the ATF 4473[4] that the Defendant's listed address was 4521 Logsdon Drive, Annandale, Virginia, and that the Defendant answered "no" to the question that asked if he had been convicted of a crime punishable by more than a year. Tr. at 11. Subsequently, Agent Hine conducted his own criminal history check of "Patrick Duff" which confirmed that the Defendant had a felony conviction in New York for criminal possession of a weapon in 1987. Tr. at 12.

Thereafter, the record reveals that the Government did not conduct any investigation from the date of the offense until July 1992. On July 24, 1992, a warrant was issued for the Defendant's arrest. As of this date, no indictment had yet been returned.[5]

In August of 1992, Agent Hine sent a collateral report, which is a report sent form one ATF office to another requesting assistance, to the New York ATF Field Division.[6] Tr. at 14. Agent Hine requested that the agents go to the last known address of Patrick Duff, attempt to locate him and make an arrest on the outstanding warrant. Id. This attempt was unsuccessful.

Almost two-and-a-half years later, Agent Hine forwarded another collateral request to the New York ATF Division in January of 1995. Tr. at 15. Again, this request was unsuccessful in locating the Defendant.

---

**3.** The Defendant did tender to the Court five separate exhibits which were marked for identification and admitted into evidence without objection.

**4.** Any purchaser of a firearm is required to complete this form. The purchaser must fill out an ATF 4473, indicating their name, address, date of birth, etc. Moreover, several questions are required to be answered truthfully. The purchaser must then sign the ATF 4473 in order to certify that the answers on the form are true.

The ATF 4473 at issue in this case was admitted into evidence as Defense Exhibit No. 1.

**5.** The Government stipulated that an indictment was not returned in the instant case until March of 1996, which was the Government's first attempt to go to the grand jury and seek the return of an indictment on the instant charge. Tr. at 19.

**6.** Agent Hine testified that he learned Patrick Duff was living in New York based on "[i]ndications from drivers records, criminal history.... [and that] [t]he records reflected a New York address in the Bronx." Tr. at 13–14.

However, in September of 1995, Agent Hine was notified by the FBI Identification Section that an individual named Patrick Williams was arrested in New York and that this individual's fingerprints matched the known fingerprints of Patrick Duff. Tr. at 15–16.

Finally, on direct examination, Agent Hine testified that the Defendant was arrested on March 5, 1996, at a courthouse in New York. Tr. at 16.

On cross-examination, Agent Hine was shown the Defendant's certified parole file and final discharge record from the New York Department of Parole.[7] Agent Hine testified that he originally received the Defendant's parole file in 1991. Tr. at 20. The parole file indicates that the Defendant was on parole in New York from 1989 until November of 1992. Agent Hine testified that after he received the Defendant's parole file, he never spoke to any parole officers in New York and did not call the parole office to see if the Defendant regularly reported to a parole officer. Tr. at 22. Moreover, Agent Hine never inquired as to what the Defendant's verified present home or work address was or whether the Defendant had appeared in court after his placement on parole. Id.

Agent Hine also testified on cross-examination that he spoke with the Defendant's father in 1991 and asked him if he had a son named Patrick. Tr. at 27. The Defendant's father told Agent Hine that he did have a son named Patrick. Agent Hine recalled that he asked the Defendant's father if he knew how he could get in touch with the Defendant and that he never told the Defendant's father that his son was suspected of committing a crime. Tr. at 28.

The next Government witness was Agent McCarthy. Agent McCarthy testified that in September of 1992, he received a collateral request from Washington, D.C. to try and locate and arrest the Defendant. Tr. at 34. Agent McCarthy went to the Defendant's mother's address at 705 East 227th Street in the Bronx. Id. There, Agent McCarthy and Agent McCole knocked on the door and spoke with the Defendant's mother, Mrs. Matthews. Id.

On cross-examination, Agent McCarthy testified that he never told Mrs. Matthews that her son was wanted for a criminal offense or that there was an outstanding arrest warrant for her son and that he should turn himself in to the appropriate authorities. Tr. at 36–37. Agent McCarthy only informed Mrs. Matthews that he was looking for the Defendant. Tr. at 37.

The third and final Government witness was Agent McCole. Agent McCole testified that, pursuant to a collateral request from Agent Hine, he went to the Defendant's last known address at 705 East 227th Street in the Bronx on March 31, 1995. Tr. at 42. There, Agent McCole saw mail in the apartment's mailbox and spoke to a Marcus Phillips, a man exiting the building. Tr. at 42–43. Agent McCole informed Mr. Phillips he was an ATF agent and was looking for the Defendant. Tr. at 43. Agent McCole also spoke to a Candace McGarrow and told her he was an ATF agent looking for the Defendant and left her his business card. Tr. at 43–44.

Based upon information obtained during the visit to 705 East 227th Street, Agent McCole testified that he went to 130 West Fourth Street, Apartment 2–A, in Mount Vernon, New York. Tr. at 44–45. There, Agent McCole spoke to the Defendant's father, Patrick Duff, Sr., and told him that he had a warrant for his son's arrest, briefly outlined the charges and told him that it was important for the Defendant to contact him. Tr. at 45–46. Agent McCole also testified that he gave the Defendant's father his business card. Tr. at 44.

In October of 1995, Agent McCole received a third collateral request from Agent Hine regarding the Defendant. Tr. at 47. From this request, Agent McCole learned that the Defendant had been arrested using the name "Patrick Williams." Id. Agent McCole also went to an "area" of the Defendant's last known address on 227th Street because he was arrested approximately one block south

7. These documents were admitted into evidence as Defense Exhibits Nos. 2 and 3.

of that location.[8]  Tr. at 48.  Agent McCole never reviewed the Defendant's parole file or spoke to a parole officer.  Tr. at 59–60.

Agent McCole testified that after one unsuccessful attempt to arrest the Defendant during one of his court appearances, he was ultimately successful in arresting the Defendant for the instant offense on March 5, 1996.[9]  Tr. at 49.  On that day, Agent McCole spotted the Defendant walking down a hallway toward the courtroom where his scheduled appearance was and then placed him under arrest.  Id.  Agent McCole testified that the Defendant asked him if his name was "McCole."  Tr. at 50.  After Agent McCole indicated that it was, Agent McCole then testified that the Defendant interrogatively said, "Peter McCole."  Id.  Again, Agent McCole indicated his name was Peter McCole.  Id.

Agent McCole testified that he was certain he gave the Defendant Miranda warnings, but was not sure when he Mirandized the Defendant.  Tr. at 50–51.  Agent McCole remembered reading the Defendant his Miranda rights "off a card" and then had the Defendant sign a form.  Tr. at 51.  However, neither the Defendant's original Miranda form nor a copy was produced in Court.

Lastly, Agent McCole testified that the Defendant told him that he knew Agent McCole had been to his house on several occasions looking for him and that the Defendant (apparently referring to the instant offense) spontaneously told Agent McCole that no guns were actually purchased.  Tr. at 53.

On cross-examination, Agent McCole revealed that it was not until the day before the instant hearing, that is, May 30, 1996, that he realized the importance of everything he had said to the Defendant's father.  Tr. at 54.  Consequently, the reason given by Agent McCole for the omission of certain material representations from his report[10], which he filled out after his contact with the Defendant's father, was because he did not realize the importance of the contact at the time.  Id.  Moreover, Agent McCole testified that it was not until he had conferred with the U.S. Attorney's office the day before the hearing that he realized the importance of what he had said to the Defendant's father.  Tr. at 54–55.

Agent McCole testified that he also had a notebook with him on the day he made contact with the Defendant's father.[11]  Neither Agent McCole's report nor his handwritten notes contemporaneously made with the contact reflect the fact that he told the Defendant's father that there was a warrant for his son's arrest.  Tr. at 58.  Moreover, Agent McCole's notebook indicated that he left his business card with the building superintendent, not with the Defendant's father.  Tr. at 58–59.

## II.

The federal statute of limitation provides that an indictment must be found or an information instituted within five years of the completion of the offense.[12]  However, the statute will not run in favor of any person fleeing from justice.[13]

■  The Government argues that the Defendant fled to avoid justice which, in turn,

---

**8.**  When Agent McCole was asked why he did not go directly to the Defendant's last known address, Agent McCole testified that he was worried if he knocked on the Defendant's door he could make the Defendant or his family members aware of the fact that he was looking for him again and that the Defendant may have realized his fictitious name and real name fingerprints had been matched.  Tr. at 47–48.  In essence, Agent McCole was worried that because the Defendant had been showing up in court under the name Patrick Williams, the Defendant may not choose to appear in court if he knew someone was looking for him.

**9.**  Subsequently, the Defendant was indicted on the instant offense by a federal grand jury sitting in Alexandria, Virginia, on March 14, 1996.  The Defendant was arraigned in the Eastern District of Virginia on April 15, 1996, and a trial date was scheduled for June 10, 1996.

**10.**  This report was admitted into evidence as Defense Exhibit No. 4.

**11.**  The notes contained in Agent McCole's notebook were admitted into evidence as Defense Exhibit No. 5.

**12.**  18 U.S.C. § 3282.

**13.**  18 U.S.C. § 3290.

tolled the statute of limitations. Consequently, the issue to be decided by this Court is what constitutes fleeing from justice in light of the purpose of the tolling statute in relation to the applicable statute of limitations.

Beyond question, the true purpose underlying the tolling statute, codified in § 3290 is two-fold:

> (1) that a person may not employ a statute of limitations to his own advantage simply by intentionally avoiding capture and prosecution on a pending charge; and (2) that a person utterly without knowledge that criminal charges are pending who happens to avoid the authorities (who may or may not be diligent in searching for him) should be afforded the protections of the statute of limitations.

*United States v. McKinney,* 785 F.Supp. 1214, 1219 n. 7 (D.Md.1992). Thus, when a defendant, in order to avoid capture and prosecution, flees a particular jurisdiction which has borne the brunt of the defendant's criminal activity, the jurisdiction should be afforded additional time to discover not only the defendant's conduct but the actual location of the suspect and thereby initiate an appropriate prosecution. In the same vein, where, as here, a jurisdiction is unquestionably aware of the defendant's conduct, but not of his precise location and the defendant leaves such a jurisdiction without knowledge of the pending charges and without the intent to avoid capture and prosecution, the protection of the statute of limitations should shroud the defendant with all its power.

As the Government correctly notes, there exists two separate bodies of case law regarding the definition of flight from justice.[14] Some jurisdictions have held the mere absence of a defendant from the prosecution jurisdiction, regardless of his intent, may serve to toll the statute. *See McGowen v. United States,* 105 F.2d 791 (D.C.Cir.), *cert. denied,* 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed. 464 (1939); *King v. United States,* 144 F.2d 729, 731 (8th Cir.1944), *cert. denied,* 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945). Other jurisdictions require that the Government show that a defendant actively concealed himself with the intent to avoid arrest or prosecution. *See United States v. Fonseca–Machado,* 53 F.3d 1242, 1243–44 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 326, 133 L.Ed.2d 227 (1995); *United States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir.1976); *Donnell v. United States,* 229 F.2d 560 (5th Cir. 1956); *United States v. Catino,* 735 F.2d 718, 722 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *Brouse v. United States,* 68 F.2d 294 (1st Cir.1933).[15]

■ However, whichever definition is applied, it cannot be ignored that the burden of proof is on the Government to prove the Defendant's intent in order to trigger the tolling exception to the statute of limitations. *Marshall, supra,* 856 F.2d at 900. Moreover, the actual burden of proof is that by a preponderance of the evidence the Government

---

**14.** The leading case which is accredited with being the cause for these divergent views is a turn-of-the-century Supreme Court case, *Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895). There, the defendant committed a criminal offense indictable under both state and federal law. A timely state indictment was returned against the defendant. However, no federal indictment was brought until after the expiration of the federal statute of limitations. When the defendant moved to dismiss the federal charges, the government produced evidence that the defendant fled to Europe upon learning of the state indictment, but before being indicted in the federal system.

Thus, the question presented was whether the defendant's flight prior to the return of the federal indictment constituted a flight from justice within the meaning of what is now § 3290. In holding that it did, the Supreme Court stated:

> In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

160 U.S. at 133, 16 S.Ct. at 246. Consequently, the most reasonable contextual interpretation of *Streep* leads to the irrefutable conclusion that the very idea of flight includes an element of intent. *See, e.g., United States v. Rivera–Ventura,* 72 F.3d 277, 283 (2nd Cir.1995); *United States v. Marshall,* 856 F.2d 896, 898–900 (7th Cir.1988).

**15.** It is sufficient to note that the Fourth Circuit has not been squarely presented with the issue now before the Court.

must demonstrate that the Defendant fled the jurisdiction with the intent to avoid arrest or prosecution, *see id.; United States v. Gonsalves,* 675 F.2d 1050, 1052 (9th cir.), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982); *Jhirad v. Ferrandina,* 486 F.2d 442, 444 (2d Cir.1973), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98, *reh'g denied,* 429 U.S. 988, 97 S.Ct. 511, 50 L.Ed.2d 600 (1976), or that while outside of the jurisdiction, the defendant learned of the charges and opted not to return. *Fonseca, supra,* 53 F.3d at 1244; *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98, *reh'g denied,* 429 U.S. 988, 97 S.Ct. 511, 50 L.Ed.2d 600 (1976).

Consequently, the case authority which holds that the mere absence of a defendant from the prosecution jurisdiction, regardless of his intent, may serve to toll the limitations period, renders the burden of proof nugatory and all but eviscerates any protection which the statute of limitations was designed to provide. Such a result can hardly be countenanced in a situation where, as here, the Government knew of the Defendant's criminal conduct for over five years and failed to either indict him or take reasonable actions which would have ensured the Defendant had knowledge of the charge pending in the Eastern District of Virginia.

■ The next determination that must be made is whether the Defendant was a fugitive from justice which would serve to toll the statute of limitations. Such a determination is a question of fact. *See Fonseca–Machado,* 53 F.3d at 1243 (citing *Donnell, supra,* 229 F.2d at 562–65).

■ It is true, as the Government asserts, that a defendant's "intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending." *Catino, supra,* 735 F.2d at 722; *United States v. De Risio,* 686 F.Supp. 82, 85 (S.D.N.Y.1988).

In truth and in fact, *De Risio, supra,* is the case which most closely resembles the case at bar. There, the offense was alleged to have taken place in 1978, and an arrest warrant was issued in 1979. The evidence revealed that postal inspectors went to the defendant's residence on May 15, 1979, ascertained that he still lived there, knocked on his door and properly identified themselves. A male voice responded, "I'll be right there.". After waiting several minutes without anyone opening the door, the agents went to the rear of the defendant's apartment and found the back window open.

Moreover, in *De Risio,* the agents on subsequent occasions told the building superintendent to call them if he saw the defendant and contacted the defendant's mother and told her that her son was wanted on criminal charges. Ultimately, the defendant was indicted on March 20, 1987, more than eight years and seven months after the offense occurred.

The district court in *De Risio* dismissed the charges holding that the "[t]he critical element of proof is knowledge of a pending charge." *Id.* at 85. The court found that the agents never saw the defendant, never received a call from the building superintendent and never established either that the defendant's mother, who did have knowledge that her son was wanted on an arrest warrant, ever contacted her son with this information, or even that the defendant contacted his mother. Thus, the evidence fell far short of supporting an inference whereby the defendant either knew of the charges, had been informed of the charges, or was actively concealing himself after having gained knowledge of the charges.

■ Applying these principles to the case at bar, the evidence reveals that the Defendant was on supervised parole during the years 1989 until his final discharge in November of 1992. The parole file reflects the fact that the Defendant regularly reported to his parole officer, maintained regular employment, had verified home and work addresses and that at least one home visit was performed during the time he was on parole. Further, the Defendant was arrested during the period of his supervised parole under the name Patrick Duff.

Agent Hine testified that he received the Defendant's parole file in 1991. Yet, Agent

Hine never spoke with any parole officers in New York and, other than requesting the Defendant's parole file, never called the parole office to inquire whether the Defendant regularly reported or what his verified home or work address was in New York.

Agent McCarthy acknowledged that he did make contact with the Defendant's mother, but that he never told her that the Defendant was wanted on an arrest warrant or that he should turn himself in to the appropriate authorities. Rather, Agent McCarthy only told the Defendant's mother that he was looking for the Defendant. Further, Agent McCarthy never checked to ascertain whether the Defendant was on active parole supervision at any time.

Significantly, neither Agent Hine nor Agent McCarthy could establish that the Defendant's parents communicated to the Defendant that he was wanted on an arrest warrant for the instant offense or even that the Defendant's parents told him ATF agents agents were looking for him. Nor is there any evidence that the Defendant contacted his parents on his own and was told of the arrest warrant or that ATF agents were looking for him.

The Court finds the testimony of Agents Hine and McCarthy credible. However, neither agents' testimony, either standing alone or when viewed together, is particularly helpful in assisting the Government with meeting its burden of proof.

In order for the Government to prove by a preponderance of the evidence that the Defendant knew of the charges and intended to avoid arrest or prosecution, the Court must find Agent McCole's testimony credible. This, the Court cannot do.

Agent McCole testified that he gave the Defendant's father his business card and told him that there was an outstanding arrest warrant for his son. However, on cross-examination, Defendant's counsel elicited from Agent McCole that neither his report nor his contemporaneous notes reflected the fact that he told the Defendant's father that there was a warrant out for his son or that he told the Defendant's father that he was looking for the Defendant. Significantly,

Agent McCole's notes reflect the fact that he left his business card with the building superintendent, not the Defendant's father.

While Agent McCole can recall exactly what he told the Defendant's father fourteen months ago, he is uncertain of when he Mirandized the Defendant on March 5, 1996. Agent McCole's credibility is further impeached by the fact that he did not realize how important the information he gave to the Defendant's father was until he conferred with the U.S. Attorney's office the day before the hearing. In fact, the very first time Agent McCole said that he told the Defendant's father that he was looking for the Defendant was the day before the hearing after conferring with the U.S.

Similarly, while Agent McCole's handwritten notes reflect the fact that he left his business card with the building superintendent, neither his report nor his notes indicate what he said to the Defendant's father or that he left his business card with the Defendant's father.

Lastly, Agent McCole never reviewed the Defendant's parole file or spoke with a parole officer.

Accordingly, the Court does not find Agent McCole to be a credible witness as he was effectively impeached during the May 31, 1996, hearing on numerous occasions concerning material matters.

The Government asserts that because the Defendant used the fictitious name "Patrick Williams" when he was arrested in New York on July 12, 1995 for state firearms charges, he must have started using that name after learning of the agents' visits to his parents' home. However, the Government did not put forth any evidence to show the Defendant used an alias or otherwise presented himself as anyone but Patrick Duff outside of this one occasion in 1995. In fact, Agent Hine testified that he was not aware of any evidence that the Defendant ever used a fictitious name before the one instance in September of 1995. Tr. at 29.

### III.

The instant offense is alleged to have been committed on December 22, 1990. On July

24, 1992, an arrest warrant was issued for the Defendant. Thereafter, the agents attempted to contact the Defendant on three occasions without success. While the agents talked with both the Defendant's mother and father, the Court finds that the agents never informed them of the purpose of their visit. Agent McCole also spoke with the Defendant's supposed building owner and superintendent, gave him his business card and told him to contact him next time he saw the Defendant. Agent McCole was never contacted.

Still, on September 23, 1995, three months before the end of the statute of limitations period, the ATF agents learned that the Defendant had been arrested in New York City on July 12, 1995, for state firearms charges. At the time of arrest in New York City, the Defendant apparently used the name "Patrick Williams".

Even armed with this information, the ATF agents did not arrest the Defendant on the outstanding Eastern District of Virginia warrant until after the Defendant appeared in a New York City state court proceeding on March 5, 1996.

As the Defendant asserts, the best that can be said is that over a five-year period, ATF agents twice communicated with members of the Defendant's family but never informed the family of the purpose of their visit, or, more importantly, that there was an outstanding arrest warrant for their son. Moreover, there is no credible evidence which establishes either that the Defendant's parents communicated crucial information to the Defendant or that the Defendant contacted his parents and learned of the instant charges before he was arrested on March 5, 1996.

Title 18 U.S.C. § 3282 unambiguously states that an indictment must be found or an information instituted within five years of the completion of the offense. More than five years passed after the completion of the instant offense and, as stated above, the statute of limitations was not tolled pursuant to § 3290.

The Government has failed to carry its burden of proving by a preponderance of the evidence that the Defendant had knowledge of the pending charge and either fled the Eastern District of Virginia with the intent to avoid arrest or prosecution or while outside of this jurisdiction, the Defendant learned of the charge and decided not to return or self-surrender.

Accordingly, the statute of limitations contained in § 3282 bars the prosecution of the Defendant's instant offense. Because the statute of limitations applies, the Government has surrendered its right to prosecute the Defendant on the instant offense and the Indictment returned in the Eastern District of Virginia on March 14, 1996, charging Patrick Duff with a violation of 18 U.S.C. § 922(a)(6) is **DISMISSED WITH PREJUDICE.**

An appropriate Order shall issue.

### ORDER

For the reasons put forth in the accompanying Memorandum Opinion, it is accordingly **ORDERED:**

(1) that the statute of limitations contained in 18 U.S.C. § 3282 bars the prosecution of Patrick Duff on the charge alleged in the Indictment returned in the Eastern District of Virginia on March 14, 1996, which charges Patrick Duff with a violation of 18 U.S.C. § 922(a)(6);

(2) that the Indictment returned in the Eastern District of Virginia on March 14, 1996, charging Patrick Duff with a violation of 18 U.S.C. § 922(a)(6) is **DISMISSED WITH PREJUDICE.**