**UNITED STATES of America, Plaintiff,**

v.

**Albert NABEPANHA Defendant.**

**No. 99–730–CR–HUCK.**

United States District Court,
S.D. Florida.

Feb. 8, 2001.

Reuben C. Cahn, Public Defenders Office, Ft. Lauderdale, FL, for defendant.

### *ORDER DENYING MOTION FOR DISCOVERY*

BROWN, United States Magistrate Judge.

This Cause is before the Court on Defendant Albert Nabepanha's Motion for Discovery, filed November 21, 2000. This Court having reviewed the motion and the response, and being otherwise fully advised, **FINDS** as follows:

Defendant and five others were indicted on September 30, 1999, by a Federal Grand Jury in Miami. He was charged with conspiracy to receive and possess goods stolen from an interstate and foreign shipment and two counts of receiving and possessing goods stolen from an interstate and foreign shipment. Sometime prior to being indicted, Defendant left the United States, the Southern District of Florida in particular, and relocated to Israel. He has, therefore, never been arrested.

On October 4, 2000, another defendant charged in the indictment, Joseph Elul, filed a Motion to Take the Deposition of Albert Nabepanha in Israel. On October 10, 2000, this Court appointed the federal public defender's office to represent Defendant Nabepanha's interests in this matter. On October 20, 2000, this Court held a status conference at which the Motion to Take Deposition was discussed. Counsel for Defendant Nabepanha represented that Nabepanha refused to return to the United States to be deposed or to testify at the trial of the other defendants for fear he would be arrested. However, Defendant considered being deposed in London, but expressed reservations that he would be extradited to the United States.

■ Defendant's Motion for Discovery is initially based on the position that the Defendant's Sixth Amendment right to counsel attached "at or after the initiation of adversarial judicial proceedings—whether by way of formal charge, preliminary hearing, *indictment*, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (emphasis added). Defendant further argues that counsel would be ineffective without reviewing discovery. The Sixth Amendment provides a defendant with right to counsel—not discovery. A defendant has no constitutional right to discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Furthermore, Defendant has not been arrested. Counsel's effectiveness with respect to discovery is not implicated since the government has not begun to prosecute Defendant.

Defendant further argues that Rule 16 of the Federal Rules of Criminal Procedure provides that discovery shall be made "[u]pon the request of a defendant." Defendant asserts that the government wishes to maintain his prosecution while depriving him of the protections provided by the Federal Rules of Criminal Procedure. As noted above, the government has not begun its prosecution of Defendant Nabepanha. Defendant will become protected by the Federal Rules of Criminal Procedure after he subjects himself to this Court's jurisdiction, and is arrested and arraigned.

The government argues that Defendant is not entitled to discovery because he is a fugitive, citing the "fugitive disentitlement doctrine." Defendant responds that he is a citizen of Israel who returned to his homeland when he became ill with severe pulmonary disease and incipient lung cancer and could not afford adequate health care. He maintains that if he returns to the United States, he will once again be without resources to obtain health care. He asserts that "[he] did not flee any prosecution" and that "[t]he government did not indict [him] until long after he returned to Israel."

■ Whether a defendant is a fugitive from justice is a question of fact to be determined by his acts and intent. Mere absence from the jurisdiction in which a crime occurred does not render a suspect a fugitive from justice. Rather, it must shown that the defendant "absented himself from the jurisdiction with the intent to avoid prosecution." *United States v. Fonseca–Machado*, 53 F.3d 1242, 1244 (11th Cir.1995); *see, e.g., Ross v. U.S. Marshal for the Eastern Dist. of Oklahoma*, 168 F.3d 1190 (10th Cir.1999); *United States v. Rivera–Ventura*, 72 F.3d 277 (2nd Cir.1995); *United States v. Marshall*, 856 F.2d 896 (7th Cir.1988); *United States v. Duff*, 931 F.Supp. 1306 (E.D.Va.1996). The critical element of proof is knowledge of a pending charge. The defendant's intent can be inferred from his failure to surrender to authorities once he learns of the charges while outside of the jurisdiction. *Duff*, 931 F.Supp. at 1312 (citations omitted).

■ The Court is satisfied that Defendant's refusal to return to the United States is not only due to health reasons but is also based on fear of arrest. The Defendant learned of the charges while outside of the United States and has expressed, through counsel, his fear of arrest as the reason for his refusal to return and testify at the trial of the other defendants. Defendant's fear of extradition rather than health concerns deterred him from traveling to London to be deposed. Defendant's failure to surrender himself to authorities once he learned of charges against him allows this Court to infer his intent. This Court is satisfied that Defendant is a fugitive; he knows of charges

against him and actively absents himself from this jurisdiction. *See, e.g., Schuster v. United States,* 765 F.2d 1047 (11th Cir.1985) (finding Schuster's resistance of extradition and knowledge of charges while outside of the United States dispositive of her fugitive status, triggering application of fugitive disentitlement doctrine).

Defendant argues that the fugitive disentitlement doctrine does not apply to him because the doctrine allows courts to dismiss actions brought by fugitives. Defendant further argues that his lack of resources to obtain health care in the United States and/or his reliance on the Bureau of Prisons for health care, if detained, are not appealing possibilities. He asserts that "penalizing [him] for being a 'fugitive' can hardly be said to be equitable."

■ This Court disagrees with Defendant. The fugitive disentitlement doctrine does apply to Defendant and is an equitable remedy. This doctrine provides federal courts with the discretion to limit access by fugitives to United States' courts. *See Degen v. United States,* 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993); *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Schuster v. United States,* 765 F.2d 1047 (11th Cir.1985). Although fugitive status "does not strip the case of its character as an adjudicable case or controversy[,] it disentitles the fugitive to call upon the resources of the Court for determination of his claims." *United States v. Barnette,* 129 F.3d 1179, 1184 (11th Cir.1997).

■ The fugitive disentitlement doctrine has been applied to dismiss fugitives' criminal and civil appeals. *See, e.g., Molinaro,* 396 U.S. at 366, 90 S.Ct. 498 (declining to adjudicate appellant's criminal appeal where appellant was a fugitive from justice in that case); *Barnette,* 129 F.3d at 1185–86 (applying doctrine to dismiss fugitives' appeal of a civil contempt order against them for failing to comply with a court order to enforce a forfeiture judgment against one of them). The doctrine may also be used to dismiss fugitives' affirmative claims for relief. *See, e.g., Magluta v. Samples,* 162 F.3d 662 (11th Cir.1998) (abuse of discretion for trial court to dismiss prisoner's civil action because of his status as a fugitive in an unrelated criminal matter). Although traditionally applied by the courts of appeal to dismiss the appeals of fugitives regarding their criminal matters, the district courts may sanction or enter judgement against parties on the basis of their fugitive status. There is no bar to this Court's application of the fugitive disentitlement doctrine to a fugitive seeking discovery in a criminal case in a trial court.

■ The rationales for this doctrine include "the difficulty of enforcement against one not willing to submit himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is in aid to him; and the need to avoid prejudice to the nonfugitive party." *Magluta,* 162 F.3d at 664 (citing *Degen,* 517 U.S. at 824–25, 116 S.Ct. 1777; *Barnette,* 129 F.3d at 1183). Simply stated, a fugitive's absence does not entitle him to an advantage. *See Pharaon,* 178 F.3d at 1163. The fugitive Defendant should not be allowed to gain the benefit of a favorable result when he is unwilling to risk the burden of an adverse decision. Denying discovery is a reasonable response to the problems and needs provoked by the doctrine.

■ To accept Defendant's position that the fugitive disentitlement doctrine does not apply to a discovery request in a criminal matter by a fugitive is to invite all criminals to flee from the United States before their arrest. Upon learning charges have been brought for a crime in the United States, the fugitive, through counsel, could then request discovery from the government. This would allow the fugitive to preview or test the strength of the government's evidence without being subject to the court's jurisdiction. If the evidence is weak, the fugitive could elect to return and seek affirmative relief by way of dismissal of the indictment. If the government's evidence is strong, the fugitive could simply remain outside the reach of the court. The fugitive would receive potential benefits while risking nothing, thereby obtaining an advantage.

484

The concepts of fairness and proportionality underlying the fugitive disentitlement doctrine require this Court to deny Defendant's Motion for Discovery. The Defendant has failed to show this Court that he is entitled to discovery, and the Court being otherwise fully advised, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Discovery is **DENIED**.