**UNITED STATES of America**

**v.**

**Dwayne OWENS, Keillen Smith, Johnny Stephens, Robert Owens, Coleman Essex, Gordon Lowe, Wayne Meadows, Anthony Lewis, Kenneth Allen, and Fernando Owens, Defendants.**

**Criminal Action No. 95–10397–WGY.**

United States District Court, D. Massachusetts.

Feb. 27, 1997.

---

Robert L. Sheketoff, Sheketoff & Homan, Miriam Conrad, Office of the Federal Defender, Boston, MA, for Dwayne Owens.

John M. Moscardelli, Peters, Smith & Moscardelli, Boston, MA, for Keillen Smith.

Charles W. Rankin, Rankin & Sultan, Joseph J. Balliro, Jr., Balliro & Mondano, Boston, MA, for Kenneth Allen.

James Joseph Coviello, Revere, MA, for Gordon Lowe.

Richard E. Bachman, East Bridgewater, MA, for Anthony Lewis.

John Salsberg, Salsberg & Cunha, Boston, MA, for Johnny Stephens.

Bernard Grossberg, Boston, MA, for Robert G. Owens.

Michael J. Liston, Glass, Seigle & Liston, Boston, MA, for Coleman Essex.

Michael C. Andrews, Boston, MA, for Wayne Meadows.

Michael C. Bourbeau, Boston, MA, for Fernando Owens.

John W. Laymon, Laymon & Associates, Boston, MA, for Clarence Fields.

Ester C. Berglas, Weston, Patrick, Willard & Redding, Boston, MA, for Operation Pride.

Ted Heinrich, U.S. Attorney's Office, Boston, MA, Paul V. Kelly, Foley, Hoag & Eliot,

Boston, MA, Allison D. Burroughs, U.S. Attorney's Office, Boston, MA, for U.S.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Dwayne Owens and Robert Owens have been indicted for their alleged involvement in a drug racketeering enterprise (the "enterprise") and charged with various related offenses. Dwayne Owens has moved to dismiss Counts Three (conspiracy to murder Ina Stroud), Four (murder of Ina Stroud), Five (murder for hire of Ina Stroud), Six (assault on Deron Jones), Seven (assault on Glenn Hill), Thirteen (using and carrying firearm in conjunction with the murder of Ina Stroud), Fourteen (using and carrying firearm in conjunction with the assault on Deron Jones), and Fifteen (using and carrying a firearm in conjunction with the assault on Glenn Hill) of the Superseding Indictment on the ground that the five year statute of limitations established for these offenses had expired before the Superseding Indictment was returned. Robert Owens has moved to dismiss Counts Three (conspiracy to murder Ina Stroud), Four (murder of Ina Stroud), and Five (murder for hire of Ina Stroud) of the Superseding Indictment on the same ground. The government maintains that the Superseding Indictment was timely filed because the statute of limitations had either been tolled or extended as to these charges.

### I. Background

The grand jury returned a Superseding Indictment against the defendants on May 14, 1996. The Superseding Indictment charges various offenses arising out of the drug distribution enterprise. Specifically, Dwayne Owens is charged with racketeering, 18 U.S.C. § 1962(c), (d); interstate travel in aid of racketeering, 18 U.S.C. § 1952(a)(2); conspiracy to murder, 18 U.S.C. § 1959(a)(5); murder, 18 U.S.C. § 1959(a)(1); assault, 18 U.S.C. § 1959(a)(3); murder for hire, 18 U.S.C. § 1958; conspiracy to distribute cocaine, 21 U.S.C. § 846; unlawful possession of firearms and ammunition, 18 U.S.C. § 922(g); using and carrying firearms during crimes of violence, 18 U.S.C. § 924(c); unlawful flight to avoid prosecution, 18 U.S.C. § 1073; money laundering, 18 U.S.C. § 1956; and aiding and abetting, 18 U.S.C. § 2. The Superseding Indictment charges Robert Owens with racketeering, 18 U.S.C. § 1962(c), (d); conspiracy to murder, 18 U.S.C. § 1959(a)(5); murder, 18 U.S.C. § 1959(a)(1); murder for hire, 18 U.S.C. § 1958; and conspiracy to distribute cocaine, 21 U.S.C. § 846.

The following factual allegations, drawn primarily from the Superseding Indictment and the pretrial proceedings, are relevant to the motions to dismiss:

In 1986, Dwayne Owens was a college student at Northeastern University in Boston, Massachusetts. The government alleges that in order to earn some extra money, Dwayne Owens and his girlfriend began to sell cocaine. According to the government, the business grew quickly. Dwayne Owens, as leader of the enterprise, brought in various people to help both in the distribution of drugs and in the maintenance and security of the drug enterprise. The government alleges that one such member of this enterprise was Robert Owens, Dwayne Owens' cousin.

In 1989, Dwayne and Robert Owens approached Clarence Fields ("Fields") to do some "work" for them.[1] At Dwayne Owens' trial, Fields testified that Dwayne and Robert Owens told him that they would pay him $2,000 if he would agree to kill someone for them. Dwayne Owens wanted to eliminate Ina Stroud ("Stroud"), an associate in the enterprise, because Dwayne Owens thought Stroud was giving information to authorities about his drug dealing activities and therefore "wanted her dead".

Fields testified that on July 8, 1989, Dwayne and Robert Owens gave him instructions to carry out the murder of Stroud. They allegedly paid him $1,000 prior to the murder and promised the remainder after completion of the assignment. Fields testi-

---

1. This paragraph and the next are drawn from trial testimony in the case against Dwayne Owens which is presently under way, the trial of Robert Owens having been severed. While it is open to the jury in the Dwayne Owens' case to credit this version, the Court expresses no opinion thereon.

fied that he drove a stolen car provided by Dwayne and Robert Owens to Stroud's residence. Robert Owens convinced Stroud to step outside her apartment on the pretext that Fields wanted to make a drug purchase. After bringing Stroud to Fields, Robert Owens walked away and Fields and Stroud went into a hallway in the apartment building in which she lived. After arguing about the supposed drug deal, Fields drew a gun and aimed it at Stroud. Fields testified that he said, "Bitch, do you know what time it is?" He then shot her in the head at point blank range and she fell to the floor. Dwayne and Robert Owens paid Fields the remaining $1,000 after the shooting. Stroud died in the hospital several days later on July 16, 1989.

The government further alleges that in August, 1989, Dwayne Owens once again resorted to violence in order to maintain order and control over his enterprise. The government states that Dwayne Owens shot Deron Jones ("Jones") because he was threatening to compete in Dwayne Owens' lucrative drug business. Although Jones was shot in the chest, he survived. Dwayne Owens was arrested shortly afterward near the scene of the shooting.

The government alleges that at the time of the Jones shooting, Jones was with a man named Glenn Hill ("Hill"). According to the government, Hill was the only individual who could identify Dwayne Owens as Jones' assailant. On March 29, 1990, the government alleges that Dwayne Owens shot Hill in an attempt to eliminate the only witness who could link him to the Jones' shooting. Hill was shot in the arm and immediately told police at the scene that Dwayne Owens had shot him. The police went to Dwayne Owens' residence and burst in with a battering ram, but Dwayne Owens was not there. The government maintains that Dwayne Owens

became a fugitive on that day and that he remained a fugitive until the day of his arrest in Richmond, Virginia on December 12, 1995.

At the time of the Stroud murder, the Jones' assault, and the Hill assault, the federal statute of limitations for these offenses was five years. See 18 U.S.C. § 3282.[2] Although these offenses were committed in 1989 and 1990, the Superseding Indictment was not returned until May 14, 1996—over six years later. Facially, therefore, the Superseding Indictment is time barred as to these offenses.

There are several other facts, however, that bear on the statute of limitations analysis in this case.

First, the government alleges that because Dwayne Owens was fleeing from justice from 1990 until his capture in 1995, the statute of limitations tolled during that period for the murder and assault charges. Second, the government maintains that Robert Owens was also a fugitive for a period of time after the Stroud murder. Specifically, the government states that on March 22, 1988, Robert Owens was sentenced to sixteen months imprisonment for possession of heroin in California. He was paroled on April 5, 1989, and the parole was transferred to Massachusetts one month later. According to the government, Robert Owens violated his parole in August, 1989 by "absconding." On February 12, 1990, a Parole Violation Report was issued stating 1) that Robert Owens had failed to notify the parole officer of his change in residence and that his whereabouts had been unknown since August 31, 1989, and 2) that Robert Owens had failed to maintain legitimate employment after September 5, 1989. A parole warrant was subsequently issued for Robert Owens on March 8, 1990. On February 1, 1991, federal authorities arrested Robert Owens on firearms charges.[3] The

---

**2.** 18 U.S.C. § 3282 states that:
Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**3.** After his own arrest, Robert Owens fingered Fields as Ina Stroud's murderer. Robert Owens said nothing concerning any involvement of his

own. Faced with Robert Owens' potential testimony against him and offered the chance to plead guilty to manslaughter, Fields accepted with alacrity, receiving an eighteen to twenty year sentence to a Massachusetts prison (parole eligible in twelve years). See Mass. Regs. Code tit. 120 203.01. At the time of his plea, Fields took full responsibility for the Stroud murder, without implicating either Dwayne or Robert Owens.

government maintains that Robert Owens was a fugitive for the eleven month period from March 8, 1990, the date of the parole warrant, to February 1, 1991, the date of his arrest.

In addition, on September 13, 1994, Congress increased the maximum penalty for the offenses of murder and murder for hire, making them capital offenses. 18 U.S.C. §§ 1958, 1959(a)(1) (as amended by the Violent Crime Control and Law Enforcement Act of 1994 [the "Violent Crime Act"], Pub.L. No. 103-322, §§ 60003(a)(11), (12), 330016(2)(c), 108 Stat. 1796, effective September 13, 1994). As a result, these offenses may now be prosecuted without limitation. 18 U.S.C. § 3281.[4] While the government would be out of time under the original limitations period—even with the eleven month extension it seeks to tack on due to Robert Owens alleged fugitive status, that eleven month period is nevertheless a crucial bridge for the government as it arguably extends the original limitations period to the effective date of the current (capital) version of the statute—*i.e.*, the version that has no period of limitation.

## II. *Discussion*

### A. Fleeing From Justice

The government asserts that both Dwayne and Robert Owens were fleeing from justice and that the statute of limitations tolled during their respective periods of flight. The government relies on 18 U.S.C. § 3290 which states that "[n]o statute of limitations shall extend to any person *fleeing from justice.*" 18 U.S.C. § 3290 (emphasis added).

The First Circuit has stated that "[w]hether a person is during any given period a fugitive from justice in the federal courts is ... a question of fact to be determined from his acts and intent." *Brouse v. United States*, 68 F.2d 294, 296 (1st Cir.1933). In *Brouse*, the First Circuit held that "[t]he essential characteristic of fleeing from justice is leaving one's residence, or usual place of abode or resort, or concealing one's self, with the *intent to avoid punishment.*" *Id.* at 295

(emphasis added). Although the court in *Brouse* established the appropriate standard for applying section 3290, it failed to specify who should decide the factual question of "fleeing from justice" and what burden of proof should apply to that determination. These are issues of first impression in this circuit.

■ It is well established that the burden of proof to establish that the defendant was fleeing from justice, whatever that burden may be, rests on the government. *Id.* at 296; *see also United States v. Gonsalves*, 675 F.2d 1050, 1052 (9th Cir.), *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982) ("prosecution must 'prove that the accused concealed himself with the intent to avoid arrest or prosecution.'"); *United States v. Duff*, 931 F.Supp. 1306, 1311 (E.D.Va.1996) ("the burden of proof is on the Government to prove the Defendant's intent in order to trigger the tolling exception to the statute of limitations.").

This Court notes that most cases addressing the burden of proof under section 3290 have required proof by a fair preponderance of the evidence. *See, e.g., Gonsalves*, 675 F.2d at 1054; *Duff*, 931 F.Supp. at 1311–12 (citing *Jhirad v. Ferrandina*, 486 F.2d 442, 444 [2d Cir.1973]); *Aburahmah v. United States*, 892 F.Supp. 1282, 1285 (D.Ariz.1995), *aff'd*, 107 F.3d 17 (9th Cir.1997). This Court respectfully declines to follow those cases.

■ "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary* to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (emphasis added); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In this case, the government may not convict Dwayne and Robert Owens of the above named murder and assault charges without proving that they were fleeing from justice. It follows that the government should have to prove

**4.** 18 U.S.C. § 3281 states that "[a]n indictment for any offense punishable by death may be

found at any time without limitation."

this issue beyond a reasonable doubt just like any other element of the case. This Court rules, therefore, that when the government invokes tolling under section 3290, it must meet its burden of proving beyond a reasonable doubt that the defendant was fleeing in order to avoid punishment.[5]

It necessarily follows that the question of flight from justice properly is one for the jury. "The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, ——, 115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995). In this case, flight from justice is like any other element of the government's case. Absent a waiver by either Dwayne or Robert Owens, therefore, a jury must decide whether or not they were "fleeing from justice" within the meaning of section 3290. *See Donnell v. United States*, 229 F.2d 560, 565 (5th Cir. 1956) ("... in determining whether a person charged with a crime will be denied the right to be protected by the statute of limitations, the purpose and intent of his absence is an important matter to be inquired into by the jury ...").

One final aspect of the tolling analysis warrants discussion. It appears, especially with respect to Robert Owens, that the government intends to show that both Dwayne and Robert Owens were fleeing various state charges unrelated to the charges they now face. No case in this circuit has yet decided whether, under section 3290, a defendant must be fleeing the specific federal charges for which tolling is sought or whether he may be fleeing unrelated state charges. In *Brouse*, the First Circuit held that the statute of limitations on a federal charge in one district is tolled where the defendant is fleeing a separate federal charge in another district. *Brouse*, 68 F.2d at 295; *see also United States v. Rivera–Ventura*, 72 F.3d 277, 283 (2d Cir.1995) ("when a defendant has been indicted by a federal grand jury in one district and is unaware of that indictment, his flight to avoid prosecution in a different federal district under an unrelated federal indictment of which he is aware tolls the running of the statute on the charges of which he is unaware."); *Gonsalves*, 675 F.2d at 1052–53 ("For the purposes of the 'fleeing from justice' issue, hiding out from one set of federal law enforcement authorities is equivalent to hiding out from all of them; the investigation is hampered either way."). One court has held that section 3290 tolls the statute of limitations even when the defendant is fleeing unrelated *state* charges. *United States v. Morgan*, 922 F.2d 1495, 1499 (10th Cir.), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991) ("Whether an individual is a fugitive from federal or state justice, his apprehension for subsequent unrelated federal crimes is necessarily hampered by his flight from justice."); *see also Streep v. United States*, 160 U.S. 128, 135, 16 S.Ct. 244, 247, 40 L.Ed. 365 (1895) (fleeing justice on state offense tolls

---

5. The Ninth Circuit in *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir.), *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982), explicitly rejected this conclusion. The *Gonsalves* court held that a factual finding that a defendant was fleeing from justice under section 3290 is akin to a factual finding on the voluntariness of a confession. The court reasoned that because the Supreme Court requires only that the prosecution prove the voluntariness of a confession by a fair preponderance of the evidence when the issue arises in a pre-trial hearing before the court, that standard should also apply to fleeing from justice under section 3290. *Id.*

This Court disagrees with that reasoning. As the Supreme Court has stated:

[T]he exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution and it is very doubtful that escalating the prosecution's burden of proof in Fourth

and Fifth Amendment suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions ...

*Lego v. Twomey*, 404 U.S. 477, 489; 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972). Unlike the exclusionary rules, the ultimate issue under section 3290 is whether the statute of limitations tolled, not whether evidence is placed before the jury. The ultimate validity of a criminal charge requires a higher burden of proof than a preliminary evidentiary ruling. *See United States v. Rogers*, 102 F.3d 641, 645 (1st Cir.1996) (government must negate showing of entrapment by proof beyond a reasonable doubt); *United States v. Arthurs*, 73 F.3d 444, 448 (1st Cir.1996) (government must prove defendant's acts were not product of duress beyond a reasonable doubt).

statute of limitations for same offense under federal law).

■ This Court concludes that the reasoning of *Morgan* is consistent with the underlying policy of section 3290. Section 3290 tolls the statute of limitations when a defendant is fleeing justice and avoiding law enforcement. Regardless of the offense that causes a defendant to flee, the actions necessary to avoid one set of law enforcement officials necessarily interfere with the efforts of other officials. *See Morgan,* 922 F.2d at 1499; *Gonsalves,* 675 F.2d at 1052–53. This Court holds that fleeing from justice on any charge, state or federal, will toll the statute of limitations on unrelated federal charges under section 3290.

## B. Extension of Statute of Limitations

The government faces one final hurdle with respect to Robert Owens because his alleged eleven month flight from justice does not, standing alone, render timely the government's charges in this case. In order to avoid the dismissal of Counts Four and Five, the government contends that before the original statute of limitations expired, as it was tolled by Robert Owens' eleven month flight from justice, Congress extended the statute of limitations for the offenses of murder and murder for hire. *See* 18 U.S.C. §§ 1958, 1959(a)(1) (as amended by the Violent Crime Act, Pub.L. No. 103–322, §§ 60003(a)(12), 330016(2)(c), 108 Stat. 1796, effective September 13, 1994); 18 U.S.C. §§ 3281, 3282. The government concedes that Count Three is time barred because Congress did not extend the statute of limitations for the offense of conspiracy to murder.

■ It is well established that Congress may extend a criminal limitations period without running afoul of the *ex post facto* clause so long as the original period has not yet expired. *See, e.g., United States v. Taliaferro,* 979 F.2d 1399, 1402 (10th Cir.1992); *United States v. Madia,* 955 F.2d 538, 539–40 (8th Cir.1992); *United States ex rel. Massarella v. Elrod,* 682 F.2d 688, 689 (7th Cir. 1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 1427, 75 L.Ed.2d 787 (1983); *see also Phillips v. United States,* Civil Action No. 95–11547–WGY, 1996 WL 208480, *2

(D.Mass. Mar.18, 1996), *aff'd,* 98 F.3d 1333 (1st Cir.1996). Courts have uniformly upheld this principle provided that Congress has clearly expressed its intent to enlarge the statute of limitations for offenses already committed. *See Taliaferro,* 979 F.2d at 1402; *United States v. Knipp,* 963 F.2d 839, 843 (6th Cir.1992); *United States v. Brechtel,* 997 F.2d 1108, 1113 (5th Cir.), *cert. denied,* 510 U.S. 1013, 114 S.Ct. 605, 126 L.Ed.2d 570 (1993); *Holland v. District Court, County of Douglas, State of Colo.,* 831 F.2d 940, 943 (10th Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988); *United States v. Morgan,* 845 F.Supp. 934, 942 (D.Conn.1994), *aff'd,* 51 F.3d 1105 (2d Cir.1995). In this instance, however, the Violent Crime Act does not expressly extend the statute of limitations for previously committed offenses which are still subject to prosecution. Rather, the Violent Crime Act increases the punishment for murder and murder for hire, thereby only indirectly implicating the applicable statute of limitations. *See* 18 U.S.C. §§ 3281, 3282.

■ The relevant question therefore is whether Congress intended to extend the statute of limitations for murder and murder for hire offenses committed *prior* to the enactment of the Violent Crime Act. This Court concludes that Congress, in enacting the Violent Crime Act, intended only that it apply prospectively. This view is consistent with both the constitutional backdrop against which Congress acted and the legislative history of the Violent Crime Act.

The Violent Crime Act imposes a potential penalty of death on the crimes of murder and murder for hire—a far more draconian punishment than the prior maximum sentence of life imprisonment. *See* 18 U.S.C. §§ 1958, 1959 (as amended by the Violent Crime Act, Pub.L. No. 103–322, §§ 60003(a)(12), 330016(2)(c), 108 Stat. 1796, effective September 13, 1994). Congress fully understood that the added punishment constitutionally could operate only prospectively. *See* U.S. Const. art. I, § 9, cl. 3; *see also DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("Congress,

like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties....").  As the increased penalty can apply only to those crimes committed *after* enactment of the Violent Crime Act, absent a contrary expression of Congressional intent, the same holds true for the statute's indirect impact on the statute of limitations.

██  There is not a scintilla of evidence in the legislative history of the Violent Crime Act suggesting that Congress intended that there be no limitation period for murder and murder for hire offenses committed prior to September, 1994.  *See* H.R.Rep. No. 103–324, H.R.Rep. No. 103–489, H.R.Conf.Rep. No. 103–694, H.R.Conf.Rep. 103–711, *reprinted in* 1994 U.S.C.C.A.N. 1801 *et seq.* To the contrary, the enactment of what is nothing more than a sentencing statute, without any reference to the statute of limitations, is a strong indicator that Congress intended to remove the limitations period *only* as to crimes covered by the enhanced sentencing scheme, *i.e.,* crimes committed *after* the effective date of the Violent Crime Act.[6]  Accordingly, this Court rules that the Violent Crime Act did not extend the statute of limitations as to Counts Four and Five against Robert Owens.[7]

### III.  *Conclusion*

For the forgoing reasons, this Court holds that the issue of Dwayne Owens' fugitive status must be decided by a jury under the beyond a reasonable doubt standard, and accordingly **DENIES** his motion to dismiss. With respect to Counts Three, Four, and

---

**6.**  This decision is consistent with those cases upholding the application of section 3281 where a death penalty provision has been repealed or declared unconstitutional.  *See, e.g., United States v. Manning,* 56 F.3d 1188, 1196 (9th Cir. 1995); *Coon v. United States,* 411 F.2d 422, 424 (8th Cir.1969).  *But see United States v. Provenzano,* 423 F.Supp. 662, 669 (S.D.N.Y.1976), *aff'd,* 556 F.2d 562 (2d Cir.1977) (holding that savings clause did not save the no limitations period of section 3281 as applied to federal kidnapping statute after repeal of death penalty provision). Absent a clear Congressional intent to change the statute of limitations, courts apply the statute

Five against Robert Owens, the Court **ALLOWS** his motion to dismiss and hereby **DISMISSES** those counts.

that was in effect at the time of the offense—even if the potential penalty is subsequently changed.

**7.**  Robert Owens cannot escape justice by this ruling.  The Commonwealth of Massachusetts prosecutes murder without limitation and has for some time.  Mass. Gen. L. ch. 277, § 63 (originally enacted 1836).  Indeed, such a prosecution would face fewer obstacles as the Commonwealth would not have to establish the elements of "in aid of racketeering" and "fleeing from justice" that are integral components of this federal prosecution.