IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-60732

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAMES FORD SEALE

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

A federal jury found James Ford Seale guilty of two counts of kidnaping and one count of conspiracy to commit kidnaping, in violation of 18 U.S.C. § 1201(a) and (c). The kidnapings occurred in 1964, but the federal government did not indict Seale until 2007. Seale asserts several issues on appeal. In particular, citing the forty-three-year delay between commission of the alleged offense and indictment, Seale claims that his prosecution was barred by the applicable statute of limitations. See 18 U.S.C. § 3282 (establishing a five-year limitations period for "non-capital" crimes). For the reasons stated herein, we agree.

I.

On January 24, 2007, a federal grand jury in the Southern District of Mississippi returned a three-count indictment against Seale. The indictment alleged two counts of kidnaping in violation of 18 U.S.C. § 1201(a) and one count of conspiracy to commit kidnaping in violation of 18 U.S.C. § 1201(c). The charges stemmed from Seale's alleged involvement in the 1964 kidnapings of Henry Dee and Charles Moore. Prior to a jury trial, Seale filed a number of motions, including a motion to dismiss the case as time-barred by the statute of limitations. The district court denied Seale's motions and the case proceeded to trial. After the government presented its case, and again at the close of all the evidence, the court denied Seale's motions for judgment of acquittal. The jury ultimately convicted Seale on each count. On August 24, 2007, the court sentenced Seale to life in prison. Seale timely appealed his conviction.

II.

A.

Seale raises seven issues on appeal, but this opinion only considers the argument that his prosecution was barred by the applicable statute of limitations. This issue presents a question of law that we review de novo. See United States v. Edelkind, 525 F.3d 388, 392 (5th Cir. 2008), pet. for cert. filed (U.S. July 14, 2008) (No. 08-5318). Seale was convicted of violating two provisions of the federal kidnaping statute, 18 U.S.C. § 1201. The text of that statute has never included its own limitations period.[1] See, e.g., 18 U.S.C. § 1201 (West 2006); Act for the Protection of Foreign Officials and Official Guests of the

---

[1] Congress has included specific limitations periods in certain federal criminal statutes. See, e.g., 18 U.S.C. § 1091(e) (federal genocide statute) ("Notwithstanding section 3282 of this title, in the case of an offense under subsection (a)(1), an indictment may be found, or information instituted, at any time without limitation."). Most federal criminal statutes do not have specific limitations periods, but instead rely on the default limitations periods of 18 U.S.C. §§ 3281 & 3282.

United States, Pub. L. No. 92-539, § 201, 86 Stat. 1070-73 (1972); Federal Kidnaping Act, Pub. L. No. 73-232, 48 Stat. 781 (1934). Rather, the applicable limitations period for kidnaping is determined by reference to the two default limitations periods in the criminal code. First, 18 U.S.C. § 3281 creates an unlimited period for indictment of capital offenses, which are defined as those punishable by death, and second, 18 U.S.C. § 3282 creates a five-year limitations period for all crimes that are not capital.[2]

While this scheme is easily applied in most instances, issues arise when both capital and non-capital versions of the federal kidnaping statute are potentially applicable. In 1964, the year Seale allegedly kidnaped Dee and Moore, the federal kidnaping statute authorized imposition of the death penalty when a defendant violated the provisions of the statute and the victim had "not been liberated unharmed." 18 U.S.C. § 1201 (1964).[3] Because kidnaping was potentially "punishable by death" under this version of the statute, a prosecution could commence "at any time without limitation" under the default limitations statute, 18 U.S.C. § 3281, as long as the indictment alleged the death penalty eligible language. See Smith v. United States, 360 U.S. 1, 8 (1959). Simply put,

---

[2] The full text of each statute reads as follows: "An indictment for any offense punishable by death may be found at any time without limitation." 18 U.S.C. § 3281. "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. There have been no relevant amendments to these statutes between 1964 and 2007.

[3] The text of § 1201 in 1964 stated in relevant part:

Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of jury shall so recommend . . . .

18 U.S.C. § 1201.

under the version of the federal kidnaping statute in effect in 1964, there was an "unlimited" statute of limitations.

However, Seale contends that two subsequent events made kidnaping a "non-capital" offense subject to the five-year limitations period. First, in United States v. Jackson, 390 U.S. 570, 581-82 (1968), the Supreme Court invalidated the death penalty provision in the federal kidnaping statute because it violated the Fifth and Sixth amendments to the United States Constitution. Second, the federal kidnaping statute was amended in 1972 to eliminate the death penalty as a punishment. See Pub. L. No. 92-539, 86 Stat. 1072.[4] The district court below, in an oral ruling that focused almost entirely on the effect of Jackson, concluded that kidnaping remained a capital crime with no limitations period. The court made scant reference to the 1972 amendment, stating only that it "was not made retroactive." As discussed below, we conclude that the district court erred in finding that the 1972 amendment's effect on the statute of limitations was not retroactive.

### B.

In 1972, Congress passed the Act for the Protection of Foreign Officials and Official Guests of the United States. See Pub. L. No. 92-539, 86 Stat. 1070-73. As relevant here, the Act amended the penalty provision of 18 U.S.C. § 1201, removing the death penalty as a potential punishment. Id.[5]  Under the 1972

---

[4] The text of § 1201 as amended in 1972, states in relevant part:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by a parent thereof when:
(1) the person is willfully transported in interstate or foreign commerce; . . .
shall be punished by imprisonment for any term of years or for life.
Pub. L. No. 92-539, 86 Stat. 1072.

[5] As originally introduced, the 1972 bill sought to retain the death penalty for certain violations of 18 U.S.C. § 1201, but with changes meant to address the constitutional deficiencies identified in Jackson. See S. REP. NO. 92-1105 (1972), as reprinted in 1972

version of § 1201, a defendant faced punishment "by imprisonment for any term of years or life." Id. This amendment plainly changes the punishment available, and by extension, the limitations period to be applied. See 18 U.S.C. §§ 3281, 3282. That is, under the 1972 version of § 1201, the death penalty was not an available punishment, and kidnaping was "not capital" for statute of limitations purposes, triggering application of the five-year limitations period. See id. § 3282. The parties agree with this characterization but dispute whether the five-year limitations period applies to an alleged violation of § 1201 that occurred in 1964, when prosecution did not commence until 2007. We conclude that the five-year limitations period applies.

To determine whether an amendment to a statute should be given retroactive effect, we first look to the intent of Congress. See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Absent a clear statement from Congress that an amendment should apply retroactively, we presume that it applies only prospectively to future conduct, at least to the extent that it affects "substantive rights, liabilities, or duties." See id. at 278; Greene v. United States, 376 U.S. 149, 160 (1964) ("[T]he first rule of [statutory] construction is that legislation must be considered as addressed to the future, not to the past." (quotation marks omitted)). Likewise, amendments that change the available punishment only apply prospectively. See 1 U.S.C. § 109 (the general saving clause); Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 661 (1974).

However, that presumption is inapplicable where changes to a statute are merely procedural. Turner v. United States, 410 F.2d 837, 842 (5th Cir. 1969). In other words, the presumption that statutory changes apply only prospectively

U.S.C.C.A.N. 4316, 4323. Prior to the bill's passage, however, the Supreme Court decided Furman v. Georgia, 408 U.S. 238 (1972), which invalidated death penalty schemes in several states and cast serious doubt on imposition of the death penalty generally. In Furman's wake, and on the Department of Justice's recommendation, Congress removed the death penalty from the bill amending § 1201. See 118 CONG. REC. 27116 (1972) (statement of Rep. Poff).

"must yield to the rule . . . that changes in statute law relating only to procedure or remedy are usually held immediately applicable" absent congressional intent to the contrary. Id.; see Landgraf, 511 U.S. at 275; see also United States v. Vanella, 619 F.2d 384, 386 (5th Cir. 1980) (recognizing that this rule is well-established); United States v. Blue Sea Line, 553 F.2d 445, 448 (5th Cir. 1977) ("Although the distinction between procedure and substance tends to confuse more than clarify, courts have employed it to determine whether a given statutory change super[s]edes the prior law in cases arising from acts that occurred before the legislation's effective date. If a statutory change is primarily procedural, it will take precedence over prior law . . . ."). In applying this rule, panels of this Court have reasoned that procedural changes are given retroactive effect because they do not interfere with a party's substantive rights but relate "only to the procedural machinery provided to enforce such rights." Bowles v. Strickland, 151 F.2d 419, 420 (5th Cir. 1945); see Turner, 410 F.2d at 842.

Further, in civil cases this Court has often held that statutes of limitation are procedural in nature and that changes to the applicable limitations period apply retroactively to pre-amendment conduct. F.D.I.C. v. Belli, 981 F.2d 838, 842 (5th Cir. 1993); see United States v. Flores, 135 F.3d 1000, 1003 & n.11 (5th Cir. 1998) (habeas corpus appeal) (holding that in the wake of a statutory amendment, "we normally apply the statute of limitation that was in effect at the time of the filing of the suit"); St. Louis v. Texas Worker's Comp. Comm'n, 65 F.3d 43, 46 (5th Cir. 1995) (applying the statute of limitations in effect at the time a case was filed); Resolution Trust Corp. v. Seale, 13 F.3d 850, 853 (5th Cir. 1994) (holding that statutes of limitation "usually apply to pending cases and have retroactive effect"); Fust v. Arnar-Stone Labs., Inc., 736 F.2d 1098, 1100 (5th Cir. 1984) (interpreting state law) ("Statutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are

6

unconstitutionally cast.")[6] These cases recognize that statutes of limitation are procedural in nature because they do not disturb substantive rights. See, e.g., Flores, 135 F.3d at 1003 & n.11.

This reasoning applies with equal or greater force to criminal limitations periods. Criminal statutes of limitation merely limit the time in which the government can initiate a criminal charge and do not burden substantive rights. See id. Moreover, criminal limitations periods "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." United States v. Marion, 404 U.S. 307, 322 (1971); see Toussie v. United States, 397 U.S. 112, 114-15 (1970) ("Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past."). As one court has noted, "[b]ecause both criminal and civil statutes of limitation are predicated on the same general policy considerations and perform the same basic functions, it makes sense to treat them the same for the purpose of determining whether they give rise to a presumption of retroactive or prospective applicability." State v. Skakel, 888 A.2d 985, 1022 (Conn. 2006). Further, a prior panel of this Court has

---

[6] This Court has held that amendments to a statute of limitations can be applied "retroactively," to a defendant's pre-amendment conduct, but a second line of cases holds that applying an amended statute of limitations to a suit filed after the amendment is not a "retroactive" application at all. See Landgraf, 511 U.S. at 275 ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."); Texas Worker's Comp. Comm'n, 65 F.3d at 46 ("In this case, the change in the statute of limitations . . . does not have a retroactive effect; it governs the secondary conduct of filing suit, not the primary conduct of the defendants."); Vernon v. Cassadaga Valley Cent. Sch. Dist, 49 F.3d 886, 889 (2d Cir. 1995) (similar). This reasoning yields the same result as the approach we employ today, but does so by defining the term "retroactive" by reference to the conduct of bringing a lawsuit, not the defendant's conduct giving rise to the lawsuit. While these two approaches define the term "retroactive" differently, under either approach amended statutes of limitation apply to a defendant's pre-amendment conduct. See State v. Skakel, 888 A.2d 985, 1022 n.46 (Conn. 2006).

previously applied the same retroactivity principle to an analogous situation in a criminal case. See Vanella, 619 F.2d at 385-86. In Vanella, Congress suspended the operation of a "dismissal sanction" which operated like a limitations period that required dismissal of cases when the government failed to comply with the time limits of the Speedy Trial Act. See id. The Court held that Congress's suspension of the operation of this dismissal sanction was procedural in nature and should be therefore be given retroactive effect. Id. at 386.

Additionally, we note that a large number of cases from other jurisdictions, both civil and criminal, have relied on the same principles of statutory construction to reach the conclusion that amendments to statutes of limitation apply retroactively to pre-amendment conduct. See Vernon v. Cassadaga Valley Cent. School Dist., 49 F.3d 886, 889 (2d Cir. 1995); Friel v. Cessna Aircraft Co., 751 F.2d 1037, 1039 (9th Cir. 1985) (per curiam); United States ex rel. Massarella v. Elrod, 682 F.2d 688, 689 (7th Cir. 1982) (holding that an amendment to a statute of limitations was merely a procedural change); see also Skakel, 888 A.2d at 1024-25 (surveying more than twenty criminal cases and concluding that this view is "supported by the considerable weight of authority"); Mordja v. Montana Eleventh Judicial Dist. Court, 177 P.3d 439, 444 (Mont. 2008). In Skakel, for example, the Connecticut Supreme Court concluded its extended discussion by noting that "[c]onsiderations of good sense and justice dictate that a court give retroactive effect to a criminal statute of limitations, absent an indication of a contrary legislative intent." 888 A.2d at 1024.

Many cases retroactively applying an amended statute of limitations involve statutory amendments that increase the applicable limitations period. To the extent that these cases rely on the rule that changes to statutes of limitation are procedural and thus retroactive, it makes no difference whether the limitations period is being extended or, as here, shortened. Regarding the cases that further rely on the observation that criminal defendants have no

vested right to a particular limitations period, see, e.g., Mordja, 177 P.3d at 443, we believe that observation applies equally to the government in light of the established "principle that criminal limitation statutes are to be liberally interpreted in favor of repose." See Toussie, 397 U.S. at 115 (internal quotation marks omitted). Thus, we find that this rule applies whether the limitations period is increased or decreased.

Based on these authorities, we conclude that changes to criminal statutes of limitation presumptively apply retroactively to pre-amendment offenses, absent Ex Post Facto concerns that are not present here.[7] And it is undeniable that the 1972 amendment to § 1201 had the effect of changing which statute of limitations applies. That the 1972 amendment merely changed which statute of limitations applies, without changing the limitations statute itself, is immaterial. In United States v. Provenzano, a New York federal district court considered the effect of the same 1972 amendment to § 1201 and applied the general rule that changes to statutes of limitation are retroactive, notwithstanding the fact that the amendment did not alter the language of the statute of limitations itself. See 423 F. Supp. 662, 668-69 (S.D.N.Y. 1976), aff'd 556 F.2d 562 (2d Cir. 1977) (Table). The court reached this result because the "the direct effect of the [1972] repeal is to terminate the applicability of 18 U.S.C. § 3281, the no limit statute of limitations." Id. (emphasis added).

We find Provenzano's reasoning, approved by the Second Circuit, to be persuasive. Under the circumstances of this case, there is no practical difference between an amendment to a limitations period itself and an amendment that makes a different limitations period applicable by changing the available

---

[7] The Ex Post Facto Clause prohibits retroactive application of certain statutory amendments to the detriment of criminal defendants, but that clause is not implicated in our discussion of the 1972 amendment to § 1201 because application of the five-year limitations period would not be to Seale's detriment. See Stogner v. California, 539 U.S. 607, 611 (2003).

punishment. See id. Further, we presume that Congress was aware that a change in the punishment provision of § 1201 had the effect of changing the applicable statute of limitations. See Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85 (1988) ("We generally presume Congress is knowledgeable about existing law pertinent to the legislation it enacts."). Given this knowledge, we may infer that Congress intended its amendment to § 1201 to change the applicable limitations period. See id.; see also Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 936 (11th Cir. 2000) (assuming that "Congress knew what it was doing when it enacted the statute at issue"). Lastly, the principle that statutes of limitation are to be "liberally interpreted in favor of repose," buttresses our conclusion that the shorter limitations period made applicable by the 1972 amendment should apply retroactively. See Toussie, 397 U.S. at 115 (internal quotation marks omitted).

Applying the foregoing analysis here, we first note that our review of the legislative history reveals no discussion about the 1972 amendment's effect on statutes of limitation. In the absence of legislative intent to the contrary, we next apply the presumption that amendments making a new limitations period applicable have retroactive effect. See Flores, 135 F.3d at 1003; see also Skakel, 888 A.2d at 1024-25. There is nothing to rebut that presumption here and we hold that the five-year limitations period made applicable by the 1972 amendment applies retroactively to criminal conduct committed prior to 1972, when charges are filed thereafter. The government did not initiate prosecution until 2007, well after the five-year period had expired.[8] Thus, Seale's prosecution was untimely.

---

[8] We need not decide whether the five-year limitations period expired in 1969 (five years after the crime was allegedly committed) or in 1977 (five years after the effective date of the amendment). In either case, the limitations period had long expired by 2007.

In reaching this conclusion, we necessarily reject the government's argument that the statute of limitations applicable in 1964 applies to this case because of the general "saving clause," 1 U.S.C. § 109. We disagree with the government's assertion that the general saving clause expresses Congress's intent that changes in the applicable statute of limitations apply prospectively. That section states in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. While the saving clause generally preserves substantive elements of a statute, the saving clause does not preserve procedural provisions such as a statute of limitations. See Marrero, 417 U.S. at 661-62 ("[T]he general saving clause does not ordinarily preserve discarded remedies or procedures . . . ."); Bridges v. United States, 346 U.S. 209, 227 n.25 (1953); United States v. Obermeier, 186 F.2d 243, 253 (2d Cir. 1950) ("[W]e think Congress did not regard . . . 1 U.S.C.A. § 109, as covering the subject of statutes of limitation.").[9] As this Court stated in Blue Sea Line, "the saving clause does not eliminate the need for a federal court faced with a statutory change to determine whether that change is one affecting a procedure or a penalty. If the former, it is immediately applicable, unless the legislation itself provides otherwise." 553 F.2d at 449.

In Bridges, for example, the Supreme Court examined the effect of an amendment shortening the applicable statute of limitations. 346 U.S. at 224-27.

---

[9] We emphasize that we are called on to apply 1 U.S.C. § 109, the general saving clause. Section 1201 does not contain a statute-specific saving clause of the kind that Congress has included in other federal criminal statutes. Cf. Marrero, 419 U.S. at 655-57 (applying saving clause of the Comprehensive Drug Abuse Prevention and Control Act of 1970 before turning to the general saving clause).

A five-year statute of limitations applied to violations of the Nationality Act until 1948, when Congress repealed that limitations period, effectively reinstating the default three-year period.[10] Id. at 224-25. In Bridges, the government indicted the defendant in 1949 for an alleged 1945 violation of the statute. Id. at 215. The Supreme Court was faced with either applying the five-year limitations period in effect at the time the crime was allegedly committed or applying the three-year limitations period in effect at the time the indictment issued. The Court held that the saving clause in the Nationality Act, saving all "rights and liabilities" existing prior to the amendment, did not preserve the previous statute of limitations. Id. at 225. The Second Circuit had previously considered the same issue in Obermeier. In Obermeier, the court held that the same saving clause, "preserving 'any right or liabilities'" did not apply to save a previously-applicable statute of limitations. 186 F.2d at 251. Likewise, the court held that the general saving clause also does not "cover[] the subject of statutes of limitation" because it only saves "substantive 'rights' and 'liabilities.'" Id. at 253, 254.

The cases we have previously discussed regarding the retroactivity of amended statutes of limitations involved instances where Congress directly amended the limitations period. In this case, because the limitations period was changed indirectly through amendment of the punishment provision of § 1201, we must consider the practical effect of the 1972 amendment. In doing so, we are unable to say that it made a substantive change in the statute, so as to trigger the saving clause. The Supreme Court's decision in Marrero instructs us to consider two questions when facing this situation: (1) did the old statute's provisions constitute a form of criminal punishment; and, if so (2) did the

---

[10] At that time, the default statute of limitations for non-capital crimes was three years. The statute was later extended to five years in 1954. See Pub. L. No. 83-769, § 10, 68 Stat. 1145.

amendment extinguish or ameliorate such penalty. Only if we answer both questions affirmatively does § 109 apply to the defendant's criminal prosecution. Applying Marrero, we conclude that the death penalty provision of the pre–1972 version of § 1201 did not constitute a criminal punishment in the wake of the Supreme Court's decision in Jackson striking the death penalty from § 1201 as facially unconstitutional. Because the Court had severed the death penalty provision from the statute in 1968, Congress's legislative amendment in 1972 had no ameliorative effect upon § 1201's criminal penalties.

The government asks us to focus solely on the language of the statute before and after the 1972 amendment without considering its practical effect. This would contravene the approach taken by this and other circuits in considering whether changes to criminal statutes are actually procedural and should be applied retroactively. For example, in Blue Sea Line, we considered Congress's 1972 amendments to the Shipping Act of 1916, which converted criminal sanctions into civil penalties but otherwise left the monetary amount of the penalties unchanged. 553 F.2d at 446-47. We held "that the shift from criminal to civil penalties . . . was predominantly a procedural and remedial change . . . . Congress was clearly not engaged in ameliorating criminal punishment in adopting the 1972 amendments." Id. at 450. After noting the amendment's other effects—the shift in forum from the criminal docket to the civil docket and the reduction in the government's burden of proof—the Court in Blue Sea Line concluded: "In contrast to this complete procedural overhaul, the change in penalty was slight. The dollar range for the fines . . . went completely untouched. The sole change was in the sanction's label from criminal to civil." Id. at 450. Accordingly, the Court in Blue Sea Line held that the pre-amendment criminal sanctions were not saved by § 109. Id.; see also United States v. Mechem, 509 F.2d 1193, 1196 (10th Cir. 1975) (declining to apply § 109 to legislative amendments to 18 U.S.C. §§ 5031-37 in light of changes that were

both substantive as well as remedial and procedural because procedural changes predominated); Martin v. United States, 989 F.2d 271, 274 (8th Cir. 1993) (noting that amendments to the Firearm Owners Protection Act "had the effect of removing a punishment . . . and thus, absent more, pending prosecutions . . . are saved by the operation of § 109").

These cases illustrate the practical considerations involved in determining whether a criminal statute is saved under 1 U.S.C. § 109 following repeal or amendment. The Blue Sea Line analysis must be read in conjunction with Marrero. We may examine the legislative history and the plain language of the statute, but we must also determine whether or not the pre-amendment provisions at issue actually constituted punishment and, if so, whether the amendments ameliorated that punishment.

The above analysis is consistent with the legislative history of the 1972 amendment to § 1201. As we discussed above, the legislative history reveals no discussion of the statute of limitations or § 3282. What the legislative history does reveal is telling: congressional recognition that Jackson had invalidated § 1201's death penalty provision and the likelihood that any amendment restoring the death penalty would be facially invalid under Furman. See supra, note 5. Although it is true that the legislative history contains no discussion of procedure, it does reveal a congressional assumption that the 1972 amendment removing the death penalty would not affect the substance of § 1201 in the wake of Jackson. "There is, in short, nothing of substance to save, for that which was still is." Blue Sea Line, 553 F.2d at 450.

The foregoing analysis is also in accord with Provenzano, which held that the 1972 change to § 1201 was procedural, and therefore unaffected by the saving clause. See 423 F. Supp. at 668-69. In Provenzano, the defendants allegedly committed the offenses of kidnaping and conspiracy to kidnap in 1961, but were not indicted until 1976. Id. at 663. The defendants argued that the

Supreme Court's invalidation of § 1201's death penalty provision in Jackson and the 1972 amendment to § 1201 each had the effect of making that statute "non-capital" for statute of limitations purposes, triggering application of the five-year limitations period. Id. at 664. The court in Provenzano rejected the argument that Jackson made the statute "non-capital," but nevertheless held that the 1972 amendment to §1201 made the five-year limitations period retroactively applicable to crimes allegedly committed in 1961. See id. at 666, 669. Paramount in reaching this conclusion was the court's rejection of the government's argument that the general saving clause preserved the unlimited period applicable prior to the 1972 amendment. The court held that "[t]he clear thrust of 1 U.S.C. § 109 is to ensure that substantive penalties or liabilities incurred under a pre-repeal version of a statute not be released by the repeal." Id. at 669. However, § 109 could not save the death penalty because the Supreme Court had already rendered it nugatory: "the repeal has not released or extinguished any substantive penalty or liability under the old statute." The court further reasoned that statutes of limitation are "not part of the substantive rights or liabilities under the statute," making the saving clause inapplicable. Id. [11]

Bridges, Obermeier, and Provenzano make clear that the general saving clause, the purpose of which is to preserve substantive penalties, forfeitures and liabilities under the pre-repeal version of a statute, does not save statutes of limitation, which are procedural. This view is consistent with our Court's caselaw. See Blue Sea Line, 553 F.2d at 448. The Government makes much of the fact that in Bridges and Obermeier the applicable statutes of limitation were expressly repealed, while the 1972 amendment to § 1201 only changed the limitation period that is applicable by changing the punishment available. This is a distinction without a difference. In either case, the net effect of the statutory

---

[11] We note that Provenzano remains persuasive, despite the government's argument that it "is no longer valid," as Provenzano has never been overruled.

amendment is to change the limitations period that applies, and such changes are simply beyond the reach of the saving clause.

Further, the cases cited by the government are unpersuasive. First, we decline to follow United States v. Owens, 965 F. Supp. 158 (D. Mass. 1997), because that case is inconsistent with our caselaw. In Owens, a federal district court considered the applicability of a statutory amendment making the crimes of murder and murder for hire punishable by the death penalty. Id. at 164. The effect of the amendment was to create an unlimited statute of limitations for those crimes. See id.; 18 U.S.C. § 3281. The court in Owens held that when Congress enlarges the applicable statute of limitations, that action will only be given retroactive effect if Congress expresses that intent. 965 F. Supp. at 164. The court concluded that "[a]s the increased penalty can apply only to those crimes committed after enactment of the Violent Crime Act, absent a contrary expression of Congressional intent, the same holds true for the statute's indirect impact on the statute of limitations." Id. at 165.

Owens is inconsistent with our cases in that it fails to recognize the important distinction between procedural and substantive changes. It applies a rule of prospective application to both a change in the available penalty and the resulting procedural change in the statute of limitations that applies without recognizing that procedural changes generally apply retroactively. Our precedent does not permit us to take this approach. See Blue Sea Line, 553 F.2d at 449 ("[T]he saving clause does not eliminate the need . . . to determine whether [a statutory] change is one affecting a procedure or a penalty."). This Court has consistently applied amendments to statutes of limitation retroactively. There is no practical difference between a statutory amendment expressly changing a statute of limitations and one that changes the limitations period applicable by changing the punishment, where, as here, the only actual effect of the amendment is to bring about a procedural change. See Provenzano,

423 F. Supp. at 668-69; Blue Sea Line, 553 F.2d at 449-50. Either way, the period of time in which the government can initiate a prosecution has been changed, and those changes are given retroactive effect.

Second, we find that the other cases relied upon by the government do not begin to compel a different result. For example, in United States v. Mayfield, 999 F.2d 1497, 1502 (11th Cir. 1993), the court applied the ten-year statute of limitations in effect at the time charges were brought as opposed to the default five-year limitations period in effect when the crime was allegedly committed. This retroactive application of an amended statute of limitations is plainly consistent with our reasoning. Likewise, in Vanella, 619 F.2d at 386, a prior panel of this Court applied the rule that "statutory changes that are procedural or remedial in nature apply retroactively." Of course, this is precisely the rule that we apply today to the 1972 amendment's effect on the statute of limitations. And in United States v. Winters, 424 F.2d 113, 116 (5th Cir. 1970), a prior panel of this Court merely recognized "the established presumption which requires that only prospective operation be given every statute which changes established rights." This rule does not control the present case because statutes of limitation do not affect established rights. See Flores, 135 F.3d at 1003 n.11. Lastly, in Stoner v. Graddick, 751 F.2d 1535, 1548 (11th Cir. 1985), the court found, in the context of a habeas corpus appeal, that a state law requiring application of the statute of limitations in effect at the time a crime was committed had a "rational basis" such that it did not violate the Equal Protection Clause. Stoner is inapposite as our holding is not grounded in notions of Equal Protection or rational basis review of a state law.

C.

For purposes of completeness,[12] we will briefly consider Congress's 1994 amendments to the federal kidnaping statute.[13] At oral argument, both parties agreed that the 1994 amendment did not affect the outcome of this case, but for different reasons. Citing to Owen, the Government argued that the 1994 amendment had no effect on the limitations period because the amendment only applied prospectively. In contrast, Seale assumed that the 1994 amendment resulted in a retroactive change to the limitations period, but he argued that the Ex Post Facto Clause was an independent bar to applying the 1994 version of § 1201 to this case.

If the 1994 amendment to § 1201 only applied prospectively, then it is irrelevant to this case. On the other hand, if the 1994 amendment resulted in a retroactive change to the limitations period, then Seale's prosecution would be timely. However, we need not decide whether this change should apply retroactively because there is an independent bar to applying the 1994 version of § 1201 to this case. In Stogner v. California, the Supreme Court held that the Ex Post Facto Clause applying to state governments, U.S. CONST. art. I, § 10, cl. 1, prohibits application of a statutory amendment that has the effect of reviving a prosecution that was barred by the previously applicable limitations period.

---

[12] Although both parties mention the 1994 amendment in their briefing, neither party explains its effect, if any, on this case. Furthermore, the district court did not consider it. In response to the panel's request, the parties discussed the effect of the 1994 amendment in Rule 28(j) letters and at oral argument.

[13] Congress amended § 1201 in 1994 to reinstate the death penalty in those cases where "the death of any person results." See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 60003(a)(6), 108 Stat. 1796, 1969. Congress was silent about whether the 1994 amendment would apply retroactively, and the legislative history reveals no discussion about the amendment's effect on the applicable statute of limitations. Because the 1994 amendments added the death penalty, this created an unlimited prosecution period for offenses taking place after the effective date of the 1994 amendment. See 18 U.S.C. § 3281.

See 539 U.S. 607, 632-33 (2003).[14] In Stogner, a defendant allegedly committed child abuse offenses between 1955 and 1973, at which time the applicable limitations period under the California statute was three years. Id. at 609-10. In 1993, long after the limitations period had expired as to those crimes, the California legislature amended the statute expressly to allow prosecution of child abuse crimes in certain circumstances even when the earlier statute of limitations had expired. Id. at 609. In striking down the law, the Supreme Court concluded that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." Id. at 632-33.

Applying the 1994 amendment to the present facts would likewise run afoul of the Ex Post Facto Clause.[15] As we concluded above, the five-year statute of limitations made applicable by the 1972 amendment retroactively applies to the kidnaping offenses alleged to have occurred in 1964. Thus, the five-year limitations period expired, at the latest, in 1977. The five-year limitations period would have long expired by 1994 when the subsequent amendment reinstated the death penalty, and in effect created an unlimited prosecution period. Following Stogner, the 1994 amendment could not revive this barred cause of action. See id. 632-33.

It is unnecessary for us to adopt either party's argument because both parties agree that the 1994 amendment does not affect the outcome of this case. Thus, we decline to issue an advisory opinion concerning the prospective or

---

[14] We note that the Supreme Court made no distinction between the Ex Post Facto Clause that applies to states and the virtually identical Clause that applies to Congress. See Stogner, 539 U.S. at 607.

[15] In Stogner, the Supreme Court held that the California statute at issue was unconstitutional as written because it expressly authorized prosecutions when the prior statute of limitations had already expired. See 539 U.S. at 609, 632. We emphasize that our holding is that the 1994 amendment to § 1201 cannot be applied to the present facts because of the Ex Post Facto Clause. We do not question the constitutionality of § 1201 as written.

retroactive effect of the 1994 amendment. See, e.g., United States v. Fambro, 526 F.3d 836, 851 (5th Cir. 2008), pet. for cert. filed (July 31, 2008) (No. 08-5649). The effect of the 1972 amendment is the dispositive issue regarding the limitations period.

### III.

To summarize, we conclude that the five-year limitations period made applicable to the federal kidnaping statute by the 1972 amendment applies to this case, where the alleged offense occurred in 1964 and the indictment was issued in 2007. The more than forty-year delay clearly exceeded the limitations period. The district court erred by failing to recognize the presumption that changes affecting statutes of limitation apply retroactively, even without explicit direction from Congress.

While we are mindful of the seriousness of the crimes at issue, we cannot abdicate our duty to faithfully apply a valid limitations period. See United States v. Meador, 138 F.3d 986, 994 (5th Cir. 1998) ("While the[] operation [of criminal statutes of limitation] in some cases deprives society of its ability to prosecute criminal offenses, that is the price we pay for repose."). We emphasize that our conclusion is based solely on our analysis of the statute of limitations issue which, as a dispositive threshold issue, precludes the need to discuss the other issues raised on appeal challenging the validity of Seale's conviction. Consequently, we pretermit discussion of the other issues, and reserve the right to examine those issues in the future if necessary.

Thus, we VACATE Seale's conviction and RENDER a judgment of acquittal.

VACATED and RENDERED.